THE PANHANDLE NATIONAL BANK v. THE SECURITY COMPANY ET AL.

Decided January 26, 1898.

**1. Pleading—Admission.**

An admission in defendant's answer of an implied agreement that insurance should be carried for the indemnity of plaintiff, a mortgagee, did not admit that the policies procured were made payable to such mortgagee.

**2. Same—Judgment on Demurrer.**

See opinion for pleadings in which a general denial was followed by special pleadings admitting certain allegations in the petition, but which were held not to admit sufficient facts to justify the court in entering judgment for plaintiff on sustaining demurrers to the special answers, when defendant declined to amend, though it should be conceded that the admissions modified the effect of the general denial.

**3. Insurance—Mortgagee.**

A petition showing plaintiff to be the holder of a mortgage exceeding in amount the insurance upon the mortgaged property, and not alleged to have been paid or released, shows such interest as will entitle him, in case of loss, to collect the entire amount of policies payable to him as his interest might appear.

**4. Insurance—Mortgagee—Sale of Property—Change of Policy.**

Where insurance policies were, by agreement between the insured and a mortgagee, made payable to the latter in order to protect his debt, a sale of the property by the insured without the consent of the mortgagee would not forfeit his right to enforce the policies; nor could the insured and insurer without the consent of such mortgagee make any change in the policies which would affect the latter's rights.

ERROR from Travis. Tried below before HON. F. G. MORRIS.

*R. E. Huff* and *West & Cochran,* for plaintiff in error.

*Ward & James,* for defendant in error the Security Company.

KEY, ASSOCIATE JUSTICE.—The statement of the nature and result of this suit, as stated in plaintiff in error's brief, is conceded by defendants in error to be correct, and is as follows:

"The Security Company brought separate suits in the District Court of Travis County against the Delaware Insurance Company and the Merchants Insurance Company, upon policies of insurance for $1000 each, issued upon certain mill property situated in Wichita Falls, Texas, joining as defendants in each case, the Wichita Falls Milling Company, as the owner of the property, and the Panhandle National Bank, also a claimant of the insurance money due upon the destruction of the property. The two cases were consolidated, and plaintiff filed its amended petition, which is here set out at length, omitting formal parts, as follows, viz:

" 'Plaintiff alleges that heretofore, to wit, on the 7th day of August, 1894, defendant bank made application to each defendant insurance company herein to become insured upon a certain building, situated in Wichita Falls, Wichita County, Texas, on lots one (1) and two (2) in block No. (196) one hundred and ninety-six, of said town, the same being described as a three-story metal-roofed flour mill building and attachments, known as the Wichita Roller Mills, and situated on Tenth Street in Wichita Falls, Texas, in the sum of three hundred dollars, and in the further sum of seven hundred dollars, on the fixed and movable machinery, bran dusters, purifiers, spouting, beltings, shaftings, bolting cloths and chests, mill stones and all implements and fixtures usual to flour mills, which were situated in and attached to said mill building, and formed a part of the realty.

" 'Plaintiff alleges further that at the time of said applications, and at the time of the issuance of the policies herein sued on, defendant bank was the owner of the property insured in said policy and of the lots upon which the same was situated.

" 'Plaintiff further alleges that on the said 7th day of August, 1894, defendant insurance companies, for and in consideration of the sum of fifty dollars ($50) to each in hand paid by defendant bank to the agents of said insurance companies, Stone & Van Dyke, a firm composed of G. B. Stone and L. W. Van Dyke, made, executed, and delivered to defendant bank, each its policy of insurance, numbered respectively 343, 886, and 712, 786, each duly signed by its president, attested by its secretary, and countersigned by its said agents, for the sum of one thousand dollars, in which said policies it is especially agreed and stipulated by and between the insurers, the assured, and this plaintiff, that the loss, if any, which might occur on the said policies should be payable to this plaintiff, as its interests might appear in said property, which stipulations were entered in writing in the face of said policies at the time of their issuance, as a part thereof, and in which said policies the defendant insurance companies did insure the aforesaid property each for the sum of one thousand dollars, as hereinbefore specified, for the term of one year, commencing the 7th of August, 1894, at noon, and ending the 7th day of August, 1895, at noon, against all direct loss or damage by fire.

" 'Plaintiff alleges that it had an interest in said property at the time said policies of insurance were issued, amounting to a large sum of money,

to wit, about nine thousand dollars, by virtue of a certain judgment of the District Court of Wichita County, Texas, foreclosing the lien of a deed of trust in favor of plaintiff upon the property insured, and herein-before described, by which defendant insurance companies and their agents at that time had notice; and to secure the payment of which, in the event of loss by fire, the defendant bank, prior to and at the time of the issuance of said policy, agreed with plaintiff to keep said property insured for plaintiff's benefit in the sum of ten thousand dollars.

" 'Plaintiff further alleges that (after) the issuance of said policy, the same was delivered to plaintiff by defendant, the Panhandle National Bank, as security for its debt, and defendant bank thereafter sold all of said property to its codefendant, milling company, and with the consent of said insurance companies conveyed said property and assigned and transferred said policies of insurance to said milling company, and de-fendant insurance companies, through their agents, indorsed in writing on said policies their consent thereto.

" 'Plaintiff further alleges that after said policies had been delivered to said plaintiff, defendant bank procured same from plaintiff, upon the representations of its agents and officers, R. E. Huff and W. M. Mc-Gregor, acting for said bank, that defendant bank had sold the property insured, and it was necessary to have the policies transferred to the pur-chaser, and the written consent of the insurance companies thereto in-dorsed on said policies, and after so procuring possession of said policies defendant bank, either just before or after said policies had been trans-ferred to its codefendant milling company, without the knowledge or consent of this plaintiff or said milling company, or without any author-ity Company of Hartford, Conn., as its interests may appear,' and to rights in said policies, procured and caused the agents of defendants in-surance companies, without the knowledge or consent or authority of this plaintiff or said milling company to cancel the terms of said policies in favor of plaintiff, in words as follows: 'Loss, if any, payable to Secur-ity Company of Hartford, Conn., as its interests may appear,' and to insert in the face of said policies, in writing, as a part thereof, the follow-ing stipulation, to wit: 'Loss, if any, payable to the Panhandle National Bank, as its interests may appear.' All of which acts were done by said defendants without any authority from this plaintiff, and without its knowledge and consent.

"Plaintiff avers that at the time of the sale of said property insured, by defendant bank and defendant milling company, plaintiff agreed with said defendants bank and milling company, at the special instance and request of defendant bank, to extend the $7000 of the indebtedness against said property in favor of plaintiff, as evidenced by the herein-before mentioned judgment, and agreed with them to accept the mort-gage bond of said milling company for said sum, and did accept said bond for the sum of $7000, dated September 1, 1894, payable March 1, 1901, with interest from date at the rate of 7 per cent per annum, and 10 per cent attorney's fees if sued on or placed in the hands of an

attorney for collection; and defendant milling company, to secure the payment of said bond, on the same day executed a deed of trust to A. G. Wills, trustee, upon all the property mentioned in said policy of insurance, and upon the lots on which same was situated, to wit: Lots one (1) and two (2) in block No. (196) one hundred and ninety-six, of the town of Wichita Falls, Wichita County, Texas, which said deed of trust was recorded in the deed records of said Wichita County, Texas, and by the terms of said deed of trust, and defendant, milling company, covenanted with the plaintiff to keep said property insured for the benefit of plaintiff, to secure the payment of the debt, according to the terms of said deed of trust.

" 'Plaintiff further avers that it was induced to extend said indebtedness as aforesaid, upon the representations, promises, and agreements of defendants bank and milling company, that the interest of plaintiff in said property would be kept fully insured, and would be fully protected by the policies of insurance already issued in plaintiff's favor, which are here sued on, and that said property would thereafter be kept fully insured for plaintiff's benefit according to the former agreements in regard to insurance upon said property for plaintiff, wherein it was agreed and covenanted, that said property should be kept insured for plaintiff's benefit, in the sum of ten thousand dollars, and plaintiff would not have so extended said indebtedness but for its reliance upon said promises to so keep said property insured; and that said amount of insurance would be provided by said defendants to secure it.

" 'Plaintiff further charges that defendant bank, acting without authority from this plaintiff, through its president, R. E. Huff, has, since the loss by fire of the property insured, procured a transfer in writing of said policies to itself from said milling company, without the knowledge or consent of this plaintiff, upon the representations to said milling company, that this plaintiff had agreed to same, and said defendant bank is now setting up a pretended claim to said policies, and is wrongfully claiming the right to the proceeds of said policies, which said pretended assignment, this plaintiff charges, is without authority, illegal, fraudulent, and void.

" 'Plaintiff alleges that it is the true and lawful beneficiary in said policies, and that the amount of said policies is due and payable to plaintiff, and that all alterations, changes, assignments, and transfers attempted to be made, as hereinbefore set out, are in violation of plaintiff's rights, and are without authority, illegal, fraudulent, and void.

" 'Plaintiff would further show, in this connection, that it is the legal owner and holder of said $7000 mortgage bond, and also of four certain promissory notes, dated September 1, 1894, executed and delivered by said defendant milling company, for value to John G. James for $225, and due, respectively, six, twelve, eighteen and twenty-four months after date, with interest from maturity at the rate of 10 per cent per annum, and 10 per cent attorney's fees, if placed in the hands of an attorney for collection, which said notes were, on the day of their execution, indorsed

and transferred for value, from said John G. James to plaintiff, and which said notes are secured by a second deed of trust executed on the same day, to wit, September 1, 1894, by defendant milling company, to Ashby S. James, trustee, creating a lien upon all the property insured, and the aforesaid lots upon which the same is situated.

" 'Plaintiff alleges that it was agreed, between it and said bank, and said milling company, that in the event of fire its first mortgage should be satisfied, principal, interest, attorney's fees, taxes, and insurance, according to the terms of the deed of trust, out of said insurance in its favor, and that said second deed of trust and notes made to John G. James, should not be secured by the insurance, but should be satisfied out of the property.

" 'Plaintiff further alleges that since the issuance of the policies here sued on the said property insured was, on to wit, the 17th day of December, 1894, totally destroyed by fire, and said policies therefore, became due and payable to this plaintiff, according to their original terms.

" 'Plaintiff further alleges that since the institution of this suit defendant insurance companies have admitted their liability, and have paid the face of policies, to wit, the sum of $2000, in satisfaction thereof, and it has been agreed in writing between said bank and plaintiff, that said sum of money shall be adjudged by this court to whichever party shall show itself lawfullly entitled to same. Wherefore, plaintiff prays that it have judgment for the proceeds of the policies in suit, and for all costs of suit and for all other relief, both legal and equitable, general and special, as it may show itself entitled to.' "

The foregoing amended petition was filed December 8, 1896, and on March 9, 1897, the day of trial, the defendant bank filed the following answer thereto, viz.:

"In the above entitled cases, now comes the Pan Handle National Bank, of Wichita Falls, Texas, one of the defendants herein, and for answer, submits:

"1. A general demurrer, and says that plaintiff's petition shows no cause of action against this defendant, and of this it prays the judgment of the court.

"2. For special demurrer, this defendant says that plaintiff's petition is indefinite in allegation and vague and insufficient in this, that the plaintiff charges this defendant with certain alleged acts and doings, in reference to procuring the possession of the policies of insurance declared upon, and does not state what particular officer or agent did such act, and whether such officer or agent had any authority so to do in behalf of this defendant, and of this special demurrer, said defendant prays the judgment of the court.

"3. And for answer, should the foregoing demurrers be overruled, then this defendant denies all and singular the allegations in plaintiff's petition contained, except such parts thereof as may be hereinafter set out and pleaded, and puts itself upon the country.

"4. And for special answer in this behalf, this defendant denies spe-

cially and particularly, all and singular, the allegations and charges of fraud and misconduct on its part in reference to procuring the possession of the policies from plaintiff, and of the subsequent acts and dealings with reference thereto, and says that the same are wholly false, and that this defendant has, in all things in reference to said policies, acted as was its legal right in protecting its interests; that the said policies became void, by reason of the transfer to the Wichita Falls Milling Company, unless the consent of the insurance companies was obtained; that at the time of obtaining the consent of said companies, the defendant made a new contract with them and had said policies made payable to itself in case of loss, as it had a right to do; and that it is now the legal and equitable owner and holder of all of said policies; and was entitled to collect the amount due from the insurance companies thereon, as shown by the loss clause indorsed upon each of said policies, as set out in plaintiff's petition, and it prays judgment of the court that it hold the proceeds, now in its hands, collected from said company.

"5. And for further special answer, the Pan Handle National Bank specially denies that at any time either it or the Wichita Falls Milling Company made any agreement, verbal or written, to carry any specified amount of insurance for the benefit of the security company, plaintiff herein; or that the security company was a party to the written contract between this defendant and the several insurance companies, except solely by direction of this defendant.

"Defendant avers, that in 1893 the security company held a first mortgage on the Wichita Roller Mill property for $7000, and defendant held a second mortgage for $12,000; and that the Wichita Roller Mill Company, the common debtor of both, failed and became utterly insolvent. Defendant alleges that it recognized the priority of the lien of plaintiff at the time, and was not only willing but anxious to arrange for paying the plaintiff's mortgage, but that plaintiff, without any real necessity therefor, but solely for the benefit of its attorneys, placed its claim in the hands of A. S. James, attorney, and added the additional sum of 12 per cent of its claim, or $950, thereto, as attorney's fees, and reduced its claim to judgment; and that defendant became the purchaser of the property under foreclosure of its second lien, and the owner of said property.

"Defendant alleges that by agreement the defendant paid off the interest then due and the attorney's fees, above referred to, in all $1806.36, about August 14, 1894; and plaintiff agreed to extend its debt five years for a new mill company to be organized; that no special agreement was made out about the amount of insurance to be carried, but defendant admits that there was an implied agreement that insurance should be carried for the indemnity of plaintiff against loss of its debt.

"Defendant alleges that, at the time of the issuance of the policies in controversy, the indebtedness then due plaintiff and secured by first lien was $8866.36, and defendant being the owner of the property and policies issued in its name, had no objection to having them made pay-

able to plaintiff, as its interests might appear; but the defendant having afterwards sold the property, and becoming again only a lienholder upon said mill property to the extent of $12,500 for the unpaid purchase price of said property, it became necessary, because of clauses of forfeiture contained in said policies, avoiding said insurance if the title or interest in the property was changed, in order to protect its interest, as such lienholder, to have all the policies assigned to the Wichita Falls' Milling Company, the purchaser, and a portion of said policies made payable to defendant, as its interests might appear, which was done with the three policies now in suit, and defendant alleges that its said debt against said mill company, has continued to exist and now remains wholly unpaid.

"Defendant alleges that it then had three of the policies changed, as above stated, but not until it had paid plaintiff in cash the sum of $1806.36, and reduced its debt to $7000, and that plaintiff still held valid insurance policies to the amount of $7000, issued by good and solvent companies; and held first mortgage on the mill plant, including real estate of the value of $3000, even without improvements.

"Defendant alleges that it kept the property so insured to that amount in good companies, and that upon the destruction of the plant by fire, agreed that the Wichita Falls Milling Company should transfer. said policies to plaintiff, and that plaintiff should collect them.

"Defendant avers that plaintiff's claim was $7000 with interest from September 1, 1894, at 7 per cent; that the policies turned over to it amounted to $7000, and bore interest from February 17, 1895, at 6 per cent, and that plaintiff has collected all of said policies, or if it has failed to collect any portion thereof, such failure was caused by its own negligence, and was not the fault of this defendant, or of the Wichita Falls Milling Company, and that for the small balance that may still be due, as above set out, plaintiff holds a first lien on lots numbers 1 and 2, block 196, in the town of Wichita Falls, Texas. That said lots were then and are yet, reasonably worth the sum of $3000.

"Defendant specially denies that it at any time agreed to carry insurance for protection of plaintiff in any claim against the Wichita Falls Milling Company for attorney's fees, and alleges that the securities held by plaintiff, and appropriated to its own use, were then and are yet, ample to protect its claim in full. Premises considered, defendant prays that plaintiff be charged with the insurance policies of $7000 turned over to it, with interest on same, at 6 per cent from February 17, 1895, and that for the balance of its claim, which does not exceed $225, that it be required to exhaust its lien on lots 1 and 2 in block 196 in the town of Wichita Falls, Texas; and defendant now here offers to pay plaintiff said sum of $225, with interest at 7 per cent since February 17, 1895, if plaintiff will transfer to it its first lien on said lots for that amount.

"Defendant prays that if any judgment be rendered against it herein, that same be decreed to be a lien on said property, and satisfied by a sale

of same, and that if same shall be satisfied by defendant, it be subrogated to plaintiff's lien on said lot.

"6. And further answer, defendant pleads that since the destruction of the property by fire, the Wichita Falls Milling Company, with the consent of plaintiff, through its attorney A. S. James, has transferred its interests in said policies to defendant, that at the time of said transfer it was agreed between plaintiff and defendant that defendant should have full control and management of the collection of the three policies in controversy, and plaintiff should have control of the $7000 made payable to it.

"Defendant alleges that after said agreement, and after said transfer, and after the delivery of the policies to defendant for suit in Wichita County, Texas, plaintiff's attorney obtained possession from defendant, in Wichita Falls, Wichita County, Texas, upon the pretense that he wanted to examine said policies, but that he immediately instituted suit upon the same at Austin, Travis County, Texas, 310 miles from defendant's place of business, and impleaded defendant in said suit, for the sole purpose of harassing defendant into compliance with its demands. Defendant alleges that by reason of this act of plaintiff which was done maliciously and for the sole purpose of harassing defendant, defendant has been put to an expense of $300 in attorney's fees, and $150 other expenses, in the shape of railroad fare and hotel bills; and has been at such heavy expense in litigating with plaintiff so far from home, that it finally allowed plaintiff to compromise away $360 and interest due upon the policies, and which defendant was justly entitled to collect, and which it would have collected, but for the acts of plaintiff above complained of.

"Premises considered, defendant prays that it have judgment against the plaintiff for the sum of $810, for damages above set out and for its costs.

"7. And further answering, defendant denies that it ever had any contract with John G. James for protection of his $900 by insurance, and of this it prays the judgment of the court."

On March 9, 1897, the security company filed its first supplemental petition, consisting of a general demurrer to the special answer of defendant bank, which was sustained, and ten special exceptions which were not acted upon, and special matter in response to said defendants' answer.

The defendant bank having demanded a jury and paid the required fee, the case was placed upon the jury docket, and prior to an announcement of ready for trial on the facts, the general demurrer of the bank to plaintiff's petition was on March 9, 1897, presented and overruled, to which it excepted and the general demurrer of the plaintiff to the bank's special answer being presented, was sustained, to which ruling the bank excepted, and thereupon the court withdrew the case from and refused to empanel the jury, and without announcement of ready on the facts or

the introduction of any testimony, proceeded to enter the following judgment, viz.:

"Now on this day, March 9, 1897, this cause came on regularly for trial on the jury docket, and the parties appeared by their attorneys and announced ready for trial on the law of the case, and thereupon comes on for consideration the demurrers and exceptions of defendant, Pan Handle National Bank, to plaintiff's petition, and the same being argued are overruled, to which said bank excepts.

"And thereupon, comes on for consideration the general demurrer of the plaintiff to said defendant bank's special answer, and the same being fully argued and understood by the court, it is ordered by the court that said general demurrer be sustained, to which said.defendant bank excepted; and said bank declining to amend, the court withdraws the case from and refuses to empanel a jury, which jury having been previously called, and the fee paid by said bank, and proceeds to enter the following judgment upon the docket, viz.:

" 'Judgment for the plaintiff by the court on the pleadings, for the amount of its debt against the milling company, over against the bank, defendant, and defendant insurance company go hence without day; and defendant bank excepts to the judgment, and gives notice of appeal to the Court of Civil Appeals for the Third Supreme Judicial District.'

"And now on this March 29, 1897, the court files its written conclusions of law, to which said defendant bank again excepts, and the court doth now enter the following judgment upon the minutes of the court: It is considered, ordered, and adjudged by the court, that the Security Company do have and recover of and from the Wichita Falls Milling Company, and the Pan Handle National Bank, the sum of two thousand dollars, together with all costs of suit, for which let execution issue.

"And the defendants, the Delaware Insurance Company and the Merchants' Insurance Company, having paid to defendant bank the sum of $1000 each, in discharge of their said policies, are hereby dismissed from this suit, and shall each recover its costs. It is further ordered, adjudged and decreed by the court that the said sum of $2000, for which judgment is here rendered, shall be a payment and satisfaction, to that extent of so much of a certain mortgage debt, executed by the Wichita Falls Milling Company, on the first day of September, 1894, in favor of the plaintiff herein, the Security Company, for the sum of seven thousand dollars ($7000), with interest from date until paid at the rate of 7 per cent per annum.

"To which judgment, and all of its provisions, as here entered, the defendant Pan Handle National Bank in open court excepts, and gives notice of appeal to the Court of Civil Appeals for the Third Supreme Judicial District of Texas."

*Opinion.*—The third and fifteenth assignments of error, are addressed to the action of the court in rendering judgment on the merits of the case, without any announcement of ready thereon, by the parties, and

without any evidence being introduced in support of the plaintiff's cause of action.

In our opinion, these assignments are well taken, and require a reversal of the case. The court below appears to have proceeded upon the assumption that the defendant's answer admitted all the material allegations in the plaintiff's petition, and if this assumption were correct, no ground for reversal would exist. However, such is not the purport of the answer. The third paragraph of that pleading, denies all the allegations in plaintiff's petition, except such parts thereof as are thereafter set out and pleaded. Among other things, it is alleged in plaintiff's petition that the policies sued on were originally made payable to the plaintiff, as its interests may appear, and were afterward changed by the bank. Nowhere in the defendant's answer is it set out, pleaded, stated or admitted that the policies sued on, ever showed on their faces that they were payable to plaintiff, the Security Company, as its interest may appear, or otherwise. The answer does admit that the plaintiff had a mortgage on the property for $8866.36, and says that defendant then being the owner of the property and the policies issued in its name, had no objection to having them made payable to plaintiff, as its interests might appear. But this is merely a statement, that it had no objection to the policies being issued in the manner alleged in plaintiff's petition, but it is not an admission that they were so issued. The answer also admits an implied agreement that insurance should be carried for the indemnity of plaintiff against loss of its debt; but this is not an admission that the policies sued on were made payable to the plaintiff, or were issued for the purpose of indemnifying it.

The general demurrer which the court sustained to the defendant's special answer was not addressed to and did not apply to the general denial; and, therefore, conceding that the general denial should be construed as incorporating all the admissions made in the special answer, still, as the latter does not admit that the policies, as originally issued, were payable to the Security Company, as alleged in the petition, nor that they were issued for its benefit, the plaintiff was not entitled to judgment upon the theory that the defendant had confessed the material allegations in the petition.

Had not the bank admitted in its answer that it had collected the policies, its general demurrer to the plaintiff's petition should have been sustained, because the petition states that "the insurance companies have paid the amount due on the policies, $2000, and it has been agreed in writing between said bank and plaintiff that said sum of money shall be adjudged by this court to whichever party shall show itself lawfully entitled to same," but does not allege that the money had been paid to the defendant. This defect, however, is cured by the admission in the defendant's answer that it had collected the policies.

As the petition shows that the plaintiff held a mortgage on the property for an amount in excess of the policies sued on, and does not show that the mortgage debt had been paid or the property released, we think

it shows such an interest in the property as will entitle the plaintiff to sue for and collect the entire amount of the policies in controversy.

We also agree with the trial court that if the policies were made payable to the plaintiff, were issued in pursuance of an agreement between plaintiff and the bank to the effect that the bank would procure such insurance in order to protect the plaintiff's debt, then a sale of the mortgaged property by the bank without the consent of the security company would not, as against the security company, operate as a forfeiture of its rights to enforce the policies. And we also agree to the proposition that the bank and the insurance companies, could not, without the consent of the security company, make any change in the policies that would affect the plaintiff's rights.

There are some other questions presented by the record, which we do not care to discuss in this opinion. It is sufficient to say that the trial court ruled correctly on all the questions except those presented by the third and fifteenth assignments of error, and for the errors therein referred to, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*