**VACICEK et ux. v. TROJACK.** (No. 7962.)

(Court of Civil Appeals of Texas. Galveston.
Dec. 14, 1920.)

**1. Libel and slander ⬅84 — Allegation that words were spoken to people generally insufficient.**

An allegation in petition for slander that defendant, speaking to plaintiff and to the people generally, uttered the words claimed to be scandalous, is subject to exception, as not being definite as to whom outside of plaintiff the words were spoken.

**2. Libel and slander ⬅46—Communication to neighbor held qualifiedly privileged, and plaintiff must show malice.**

Where defendant in slander action had occasion to suspect plaintiff of stealing from her chickens, fruit, and jelly, her accusation, made to wife of plaintiff's landlord in order to prevent renewal of lease to the plaintiff; was qualifiedly privileged, and malice must be shown by plaintiff.

**3. Libel and slander ⬅124(1)—Instruction defining slander held not broader than the petition.**

An instruction that slander or defamation of character is a defamation expressed by spoken words by one to another, tending to injure the reputation of the one spoken of, and thereby expose him to public hatred, contempt, or ridicule or financial injury, or to impeach the honesty, integrity or reputation of the party spoken of, *held* not broader than the petition.

**4. Trial ⬅260(3)—Failure to charge on burden of proof in slander case in main charge held cured by giving of request as to malice.**

Where in slander action any error in court not charging on burden of proof in main charge was cured by giving of request of defendant that qualified privilege was claimed, and that burden of proof of malice was on plaintiff.

**5. Evidence ⬅322(2)—Rumors that plaintiff in slander had stolen from defendants in slander inadmissible.**

In slander action, testimony of witnesses that they heard rumors of plaintiff stealing chickens from defendants was hearsay, where defendants were not connected with the rumors.

**6. Libel and slander ⬅29—Circulation of privileged statement by confidant imposes no liability on utterer.**

Where statements made to another are qualifiedly privileged, the circulation of such statements by the confidant as rumors impose no liability on the one making the privileged statements.

Error from District Court, Wharton County; M. S. Munson, Judge.

Action for slander by Louis Trojack against Joe Vacicek and his wife. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Geo. P. Willis, of El Campo, and S. F. Rowan, of Wharton, for plaintiffs in error.

S. C. Cappel, Jr., of El Campo, and W. L. Hall, of Wharton, for defendant in error.

LANE, J. This suit was brought by Louis Trojack, who will hereinafter be called appellee, against Joe Vacicek and his wife, Agnes Vacicek, hereinafter called appellants, to recover $10,000 actual damages and $20,000 exemplary damages, which he alleges he suffered by reason of certain slanderous statements made by appellants of and concerning him.

In this petition plaintiff, Trojack, appellee here, alleged as follows:

"(1) And for good cause of action plaintiff represents to the court that he is a good, true, and honest citizen of this state, and from the time of his birth has hitherto behaved and governed himself as such, and during all that time has been held, esteemed, and reputed a good name, character, and reputation, as well among a great number of his fellow citizens as among all his neighbors and acquaintances, and during all that time he has been free from the atrocious crime of theft and burglary.

"(2) That defendants, in no wise ignorant of the premises, and of plaintiff's good name, character, and reputation, but contriving and maliciously intending, not only to injure plaintiff and deprive him of his good name, character, and reputation, but also to cause plaintiff to be brought under and subject to the pains and penalties of the law provided against theft and burglary, on or about the 15th day of May, A. D. 1916, and at times prior thereto and subsequent to said time, speaking to plaintiff and to the people generally in the community in which plaintiff resides, falsely and maliciously, openly and publicly, pronounced and published the following false and scandalous words of and concerning plaintiff to wit: 'That Louis Trojack, at night, stole chickens from our chicken coops, and fruit jars containing jelly and other fruit from our pantry.'

"(3) Plaintiff says that on account of and by means of publishing said false, scandalous, and malicious words, he has been injured, prejudiced, and damaged in his good name and reputation, and has been liable to be prosecuted for theft and burglary; and that many of his fellow citizens have withdrawn themselves from the acquaintance of plaintiff, and by reason of the premises plaintiff has undergone great mental suffering and distress.

"(4) Plaintiff says that said words spoken, pronounced, and published by defendants against and concerning plaintiff, as aforesaid, were and are false and untrue, and were willfully, maliciously, and falsely spoken, pronounced, and published by defendants for the purpose and with the intention, not only to injure this plain-

tiff and deprive him of his good name, character, and reputation, but also to cause plaintiff to lose the esteem and respect of his friends and neighbors and the public generally, and to be brought under the pains and penalties of the law.

"(5) Plaintiff would further show to the court that prior to the time said false and scandalous words were spoken and published by defendants, he had been promised a lease for land on which he now lives for another year by one Anton Zubeck, who purchased said land and premises on or about the 18th day of May, 1916, but that after such purchase the said Anton Zubeck heard of said malicious and false words concerning plaintiff, and was thereby influenced to discredit plaintiff's good name and reputation, and shortly thereafter informed plaintiff that he could not have the use of said land and premises for a longer period than it would take to harvest the crop on said land now being harvested, which action on the part of the said Anton Zubeck plaintiff alleges was due directly to the false and malicious words spoken by said defendants of and concerning this plaintiff.

"(6) Plaintiff would further show to the court that for more than three years past, and was at the time said malicious and false words were spoken of and concerning him, he was the president of the Slavonic Benevolent Order of Texas No. 40, located at Hilje, in Wharton county, Tex., and that said defendant Agnes Vacicek is a member thereof, and that they well knew that to circulate and publish a statement of and concerning said plaintiff, charging him with a crime which involves moral turpitude, would force and compel said plaintiff to resign his office as president of said order, that under the rules of said order, with which defendants are well acquainted and familiar, and by reason of said malicious and false statements and words spoken of and concerning plaintiff, said plaintiff was forced and compelled to resign his said office as president of said Slavonic Benevolent Order of Texas No. 40.

"(7) That by reason of the premises, plaintiff has sustained actual damages in the sum of $10,000.

"(8) And by reason of the willful and malicious acts of the defendants, as aforesaid, plaintiff is entitled to recover exemplary damages in the sum of $20,000.

"Wherefore plaintiff prays that the defendants be cited to appear and answer this petition, and on final hearing hereof for judgment against said defendants, jointly and severally, for the sum of $10,000 actual damages, and for the sum of $20,000 exemplary damages, and costs of suit, and for such other and further relief, special and general, in law and in equity, that he may be justly entitled to."

The defendants by the first paragraph of their answer demurred generally to the plaintiff's petition, and for further answer they presented their special exceptions to paragraph 2 thereof, as follows:

"Defendants further specially except to all that portion of said plaintiff's petition contained in paragraph 2 thereof, in which it is alleged that these defendants uttered certain slander-ous words of and concerning plaintiff on or about the 15th day of May, 1916, 'and at times prior thereto and subsequent to said time,' in this:

"(a) Because the time is indefinite and uncertain as to the allegation of time, and is insufficient to apprise these defendants of the date of said alleged slander other than that alleged to have occurred on or about the 15th day of May, 1916.

"(b) Because it is alleged in said petition that said alleged slanderous words were uttered and spoken to plaintiff himself by said defendants, and said allegation is insufficient to charge any actionable slander in so far as the said words spoken to said plaintiff himself are concerned.

"(c) And further because it is not alleged in said petition the name of other persons than the plaintiff to whom said alleged slanderous words were uttered or spoken by these defendants, and is too vague, uncertain, and indefinite to apprise these defendants of said alleged slander.

"Wherefore, defendants pray judgment of the insufficiency of said allegations."

Answering to the merits, defendants by the fifth paragraph of their answer denied generally each and all of the allegations of the plaintiff's petition, and, answering further, they alleged that the plaintiff is not a man of good character or reputation, but, on the contrary, is a person of bad reputation in the community in which he resides. They further alleged that the words alleged to have been spoken by them concerning the plaintiff are true; and that the plaintiff did, in fact, enter their premises and steal their chickens, their fruits, jelly, and eggs. They alleged further that, after they had found some of their chickens in possession of the plaintiff, and had been convinced that plaintiff had stolen their chickens and other property, the defendant Agnes Vacicek went to the house of one Leo Peterson, who was then in control of certain land and premises then in possession of the plaintiff as a tenant, for the purpose of inducing Peterson to refuse to rent said premises to the plaintiff, Trojack, longer; that on this visit to Peterson's house she did not see him, but that she saw his wife, and that she did make to said wife the statement, substantially, as alleged by the plaintiff, but that such statement was made without malice, and in an honest belief of the actual truth thereof, and in an honest desire to rid herself of an undesirable neighbor who she had reasonable cause to believe had committed the theft of her property; that such statement was made in good faith to an interested party upon a proper occasion, in an honest desire to secure the aid of Mr. Peterson in the protection of her rights, therefore such communication was privileged.

The court overruled the general demurrer and all special exceptions of defendants, and thereafter, upon trial before a jury, a verdict was returned in favor of the plaintiff

for $1,000 actual damages. The defendants have appealed.

In view of the fact that the seventh assignment presents a complaint of the action of the court in overruling appellants' special exceptions to plaintiff's petition, we shall first consider the complaint there made.

From an inspection of plaintiff's petition, set out above, it is apparent it does not allege that the alleged slanderous words were spoken to any definitely named person, except to the plaintiff himself. Appellants excepted specially to the petition, first, because the date of the alleged slander was too indefinite; and, second, that no person was named to whom the slanderous words were spoken, except to the plaintiff himself, so that appellants might be prepared to defend against the general allegations:

"That defendants, on or about the 15th day of May, A. D. 1916, and at times prior and subsequent to said time, speaking to plaintiff and to the people generally in the community in which plaintiff resides, falsely and maliciously, openly and publicly, pronounced and published the following false and scandalous words of and concerning plaintiff: 'That Louis Trojack, at night, stole chickens from our chicken coops, and fruit jars containing jelly and other fruits from our pantry.'"

[1] We think the allegation which alleges such slanderous words were spoken to people generally is subject to the special exception and that such exception should have been sustained. While it is true that appellants, in their answer, did allege that the words alleged as being scandalous were spoken to Mrs. Peterson, thereby partially curing the objection urged (Hill v. George, 5 Tex. 87; Andrews v. Hoxie, 5 Tex. 171; Grimes v. Hagood, 19 Tex. 246; McFarland v. Mooring, 56 Tex. 118; Panhandle Bank v. Security Co., 18 Tex. Civ. App. 96, 44 S. W. 15; Annotated Cases Vernon's Sayles' Civil Statutes 1914, p. 126), we do not think such answer cured the objection to the general allegation that such words were spoken to the people generally. Upon another trial, if appellee desires to prove that such words were spoken to persons other than himself and Mrs. Peterson by defendants, he should amend his petition, naming such persons.

By the first, second, third, and fourth assignments it is in substance urged that the verdict of the jury, and the judgment rendered upon same, were unsupported by any evidence, and were contrary to law in this: First, because the words spoken by appellants were spoken in confidence and without malice to those only from whom they sought aid in ridding themselves, the persons spoken to, and the public generally from the danger of having a thief in the community where such persons reside, and therefore such communication was qualifiedly privileged, and not actionable in the absence of proof of actual malice, there being no proof of actual malice adduced; second, that under the facts and circumstances above recited, it was the duty of the court, at the request of appellants, to instruct a verdict for them, because in such case it was the exclusive province of the court to determine the issue as to whether or not the words spoken were qualifiedly privileged, there being no evidence showing, or tending to show, actual malice, as shown by the charge of the court.

The ultimate of appellants' contention is that the undisputed evidence shows a state of facts which should have compelled the court to find that the communications in question were privileged and were spoken without malice, as a matter of law, and therefore a verdict should have been instructed for them.

[2] If the facts proven show that appellants had reasonable cause for believing, and did honestly believe, that appellee was a thief and a threatening menace to the property of themselves and that of their neighbors, and, so believing, communicated such belief to Mr. Peterson and Mr. Zubek, solely for the purpose of procuring their aid in removing appellee, as such menace, from their neighborhood by refusing to rent land to him, then in that event the court should have instructed the jury that such communication was privileged, and that before the plaintiff could recover it must be shown by the evidence that there was actual malice, and that the defendants in making such communication were actuated by motives of personal spite or ill will, independent of the occasion on which the communication was made, and that in such case, although the statement may have been untrue, malice cannot be implied from the mere fact of publication, though any probative evidence of malice entitled plaintiff to have his case submitted to the jury on that issue. Railway Co. v. Edmundson, 185 S. W. 402; Cobb v. Garlington, 193 S. W. 463.

Communications, otherwise slanderous, are not such when made by one person to another for the sole purpose of soliciting the aid of such other person in the protection of his property and that of his neighbors, who he in good faith believes is able or in a position to give such aid. 17 R. C. L. § 88, pages 241, 242; Schulze v. Jalonick, 18 Tex. Civ. App. 296, 44 S. W. 580, at page 586; G., C. & S. F. Ry. Co. v. Floore, 42 S. W. 607; Laughlin v. Schnitzer, 106 S. W. 908; Koehler v. Dubose, 200 S. W. 238, 243.

In I. & G. N. Ry. Co. v. Edmundson, supra, the court, quoting from Behee v. Railway Co., 71 Tex. 428, 9 S. W. 450, says:

"Malice is a necessary ingredient of libel. When a defamatory and false publication is made by one person of another, malice will be imputed to the act; but, where the publication is privileged and is believed to be true, the prima facie case of libel so made is deemed to have been fully met; and then to sustain

the action malice must be shown to exist by other evidence as by the style or manner of the writing or by extraneous facts. These principles were clearly announced by Associate Justice Roberts in the well-considered case of Holt v. Parsons, 23 Tex. 21, 76 Am. Dec. 49."

In Cobb v. Garlington, 193 S. W. 463, it is held that a privileged communication is one fairly made, by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned, and that when made on such occasion and under such circumstances, the prima facie inference of malice, arising from the publication of matter prejudicial to the character or reputation, is rebutted, and that before the plaintiff can recover he must prove that the words were spoken with actual malice. He has, however, the right to have the alleged libel itself submitted to the jury as evidence of malice on its face, and on the question of whether the author or publisher has exceeded his privilege, or had used the occasion to indulge his malice, and not in good faith to protect his own interest.

To the same effect are the holdings in the other cases above cited.

We think the undisputed evidence in this case shows that the communication alleged as slanderous was qualifiedly privileged, and that this case should be governed by the law laid down by the decisions cited; but we cannot sustain appellants' contention that the undisputed evidence shows a state of facts which should have compelled the court to find that the communication was unaccompanied by actual malice. It is true that the court did instruct the jury that the "uncontradicted evidence shows that the statement was not maliciously or wantonly made," but we think such instruction was error.

[3] It is apparent from what we have said that we think the question as to whether the communication was accompanied with malice was one, under the facts proven, to be submitted to the jury under proper instructions. We therefore hold that the court did not err in refusing to instruct a verdict for appellants, and, so believing, we overrule assignments 1, 2, 3, and 4.

The court instructed the jury as follows:

"Slander or defamation of character is a defamation expressed by spoken words by one to another, tending to injure the reputation of the one spoken of, and thereby expose him to public hatred, contempt, or ridicule, or financial injury, or to impeach the honesty, integrity, or reputation of the party spoken of."

The appellants excepted to this definition of slander, upon the ground that the same is too broad under the issues made by the pleadings. We cannot sustain this assignment, as we think the allegations of the petition are amply sufficient to allow the charge complained of.

[4] By the sixth assignment it is insisted that the court erred in failing in his main charge to instruct the jury upon the burden of proof. This contention cannot be sustained. While it is true that the main charge does not instruct upon the burden of proof, the court did, at the request of appellants, give the following charge:

"You are instructed that the defendants have pleaded that the alleged slanderous communication sued upon was privileged. In this connection, you are charged that any communication made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a moral or social duty to perform, is qualifiedly privileged, even though it contains a charge of crime, which without such privilege would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation, if it be made to a person having a corresponding interest or duty.

"Now, if you believe from the evidence that the communication alleged to have been made by the defendants herein sued upon was privileged as hereinabove defined, you are directed to find for the defendants, unless you find from the evidence that defendants were actuated by actual malice in making said communication. In this connection you are instructed that if you believe from the evidence that the communication was privileged, then you are instructed that the burden of proof is upon the plaintiff to establish by a preponderance of the evidence that defendants were actuated by actual malice in making said statement.

"You are further instructed that actual malice means ill will, or any wrongful or wicked motive which prompts or induces the act complained of."

This charge not only substantially cures the failure of the court in his main charge to instruct upon the burden of proof, but we think it clearly and correctly instructs upon the issues there sought to be presented.

[5] By the eighth and ninth assignments it is insisted that the court erred: First, in permitting the witness H. H. Deebrava to testify, over the objections of appellants, that he heard a rumor about appellee in the month of May, 1916; that Mr. Peterson told him that "appellant Mrs. Vacicek came to their house while he (Peterson) was in the field, and told his wife, Mrs. Peterson, that appellee Trojack had been stealing their (appellants') chickens;" and, second, that the court erred in permitting the witness Adolph Mozicek to testify, over the objections of appellants, that he had heard about Trojack stealing Vacicek's chickens; that he did not remember who first told him about Trojack stealing those chickens, "that they were speaking around"; that he did not know how many people he had heard discuss the matter; that he could not give the name of any person whom he heard discuss it, but he heard at least 100 persons discuss it—both of said witnesses testifying that what was said or

heard by them was not in the presence of either of appellants.

The objection urged to the testimony of both witnesses was that the same was hearsay, and showed no connection of appellants therewith, nor that either of them were responsible for the circulation of the rumor or statements testified about by the witnesses.

[6] We think these assignments should be sustained. The testimony complained of was calculated to injure the rights of appellants, and should not have been admitted. It is only the statements made by appellants for which they would be liable, and not statements and rumors made by and circulated by others. The act of appellants in telling Peterson and Zubek that appellee had stolen their property, for the purpose of soliciting their aid in protecting such property, did not confer any authority upon them, or either of them, to transmit such statements to any one else or to the public generally. If the statements made to Peterson and Zubeck were intended solely for the purpose of informing these parties of the supposed dangerous or bad character of appellee, so as to have them refrain from renting to appellee lands under their control in the neighborhood in which appellants lived and had their properties, and if these parties, or any one else to whom they may have communicated the statement made by appellants, repeated them so that they might become publicly circulated, it might fix liability upon those who gave such statements circulation, but not upon appellants.

There is no merit in the tenth and last assignment, and it is therefore overruled without further discussion.

Because of the errors pointed out, the judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.