## HOUSE v. BRACKINS et al.
### No. 12736.

Court of Civil Appeals of Texas. Dallas.

May 20, 1939.

Rehearing Denied July 1, 1939.

918

Bailey & Shaeffer, of Dallas, for plaintiff in error.

George T. Burgess, of Dallas, for defendants in error.

BOND, Chief Justice.

This controversy has narrowed down to an issue between plaintiff Ellis P. House and defendant Chas. T. Brackins, over proceeds of a fire insurance policy paid into the registry of the court by Mercantile National Bank. The policy was taken out by C. L. Brooks and wife, in accordance with the terms of a deed of trust contract entered into with Chas. T. Brackins, with loss payable to the mortgagee, to secure payment of a note in the sum of $7,400. Pending suit, a fire occurred, damaging the insured property, on which adjustment of loss was made by the insurance company, in the sum of $2,000. Plaintiff House was attorney for Brooks and wife, instituted suit for them against Brackins, to cancel the deed of trust and prevent foreclosure under its power of sale, claiming the property as their homestead, and, thereafter, was employed by Brooks in further litigations, Brooks assigning to him $1,000 of the adjusted loss as an additional fee. The insurance company made draft for the amount of loss, payable to C. L. Brooks, Chas. T. Brackins, and Ellis P. House, and, thereafter, the draft was deposited for collection, in the usual manner, with Mercantile National Bank. House's signature on the draft was secured under circumstances which we deem immaterial to this appeal. The Bank collected the draft and, because of subsequent conflicting claims to the funds, among the payees, refused payment to all claimants, resulting in the Bank filing a bill of interpleader and depositing the money in the registry of the court, pending determination of the rightful owner thereof.

In the trial court, issues of claimants to the fund were: C. L. Brooks and wife claimed the fund as against Chas. T. Brackins, on the ground that the property, on which the insurance policy was given, was their homestead, therefore, the fund was exempt to them under the Constitution, that the deed of trust and insurance loss clause payable to the mortgagee were void; that Ellis P. House claimed $1,000 of the fund as against C. L. Brooks and wife, because of the assignment, and against Brackins, because of the exempt homestead character of the property flowing to his assignors; and that Chas. T. Brackins claimed the fund as against both Brooks and House, on the strength of his priority of title, perforce of the terms of the deed of trust, the policy of insurance and the past due indebtedness, for which the deed of trust and insurance policy were given as security.

The cause was tried to a jury on special issues, and on the verdict rendered, the court entered judgment in favor of defendant Chas. T. Brackins for the fund tendered into court, less $200 allowed the Mercantile National Bank as attorney's fee, for the filing of its bill of interpleader. Plaintiff Ellis P. House alone appealed, presenting, without statement of facts, assignments based on grounds of fundamental error. Accordingly, we must determine the issue involved on the record, and assume that the issues submitted found support in pleadings and evidence, and were sufficient to sustain the verdict of the jury, else they would not have been submitted by the trial court.

The record reveals that, prior to the transaction in which Brackins' note and deed of trust came into being, a constable of Dallas County levied upon and sold the property, afterwards claimed by Brooks and wife as their homestead, to one Herron, to satisfy a valid and subsisting abstract judgment lien against the property. There is nothing in the record showing or tending to show that, at that time, the property was impressed with Brooks' homestead. The jury, in response to special issues, found: (1) That Brooks and wife had moved from the property before the execution of the deed of trust to Brackins; (2) that Brooks represented to Brackins that the property had been sold to Herron by the constable, and he (Brooks) needed the money to repurchase it; and (3) that, relying on such representation, Brackins, without any knowledge of Brooks and wife claiming the property as their homestead, they not occupying or living upon it, and, believing the representations of Brooks

that he wanted the money to repurchase the property, and that the deed of trust would create a valid lien thereon, loaned him $7,400, and accepted the deed of trust on the property as security, with an attached insurance loss clause payable to mortgagee. Accompanying these issues, the court submitted to the jury the following, which were not answered:

"Special Issue No. 2. Do you find and believe from a preponderance of the evidence that such removal (from the property in question) was with the intention not to return to the Harwood Street property? Answer: ——— (No answer)."

"Special Issue No. 9. Do you find and believe from a preponderance of the evidence that Mrs. Brooks, before the execution of the deed of trust to Brackins, knew that the property in controversy had been sold by the constable and that the money was being borrowed to repurchase the same, and with such knowledge executed the note and deed of trust to Brackins, without telling him she was claiming the Harwood Street property as homestead? Answer: ——— (No answer)."

■ We think answers to the above submitted issues would throw no light on the homestead question. The affirmative or negative answer would not and could not affect the findings of the jury, or evidence a prior homestead occupancy, or intention, sufficient to impress the property with Brooks' homestead. A finding favorable to Brooks, that he moved from the premises with intention to return, and that Mrs. Brooks did not know the constable had sold the property, and that the money was being borrowed from Brackins to repurchase it, would not avail plaintiff of the right to claim the insurance, as against Brackins, a prior assignee and owner of the fund.

■ The record before us conclusively shows that Brackins' deed of trust was a valid and subsisting lien on the property, and, as between mortgagor and mortgagee, the mortgagor was charged with the duty of taking out insurance for the benefit of mortgagee, and the mortgagee's debt being due, will charge the proceeds of any insurance taken out by the mortgagor with a lien in favor of the mortgagee. Brackins was fully protected by the deed of trust and policy; they gave him priority in rank, and his rights to the fund were not affected by the subsequent assignment to House.

House got no better right than that of his assignor.

■ In Panhandle Nat. Bank v. Security Co. et al., 18 Tex.Civ.App. 96, 44 S.W. 15, 20, the Security Company sued the Delaware Insurance Company and the Pan Handle National Bank and the Wichita Falls Milling Company, alleging that it held a lien upon certain real estate; insurance had been effected on the property with loss clause payable to the Security Company. There was a fire and the Bank collected the money. The court said: "As the petition shows that the plaintiff held a mortgage on the property for an amount in excess of the policies sued on, and does not show that the mortgage debt had been paid or the property released, we think it shows such an interest in the property as will entitle the plaintiff to sue for and collect the entire amount of the policies in controversy." See, also, Walter Connally & Co. v. Hopkins et al., Tex.Civ.App., 195 S.W. 656, 659, affirmed, Tex.Com.App., 221 S.W. 1082, holding: "An agreement between the mortgagor and mortgagee, by which the mortgagor is charged with the duty of taking out insurance for the benefit of the mortgagee, will charge the proceeds of any insurance taken out by the mortgagor with a lien in favor of the mortgagee." And in the Wheeler case, Wheeler v. Ins. Co., 101 U.S. 439, 442, 25 L.Ed. 1055, 1056, the Supreme Court said: "It is settled by many decisions in this country that if the mortgagor is bound by covenant or otherwise to insure the mortgaged premises for the better security of the mortgagee, the latter will have an equitable lien upon the money due on a policy taken out by the mortgagor to the extent of the mortgagee's interest in the property destroyed." In Zeigler et al. v. Federal Land Bank of Houston et al., Tex.Civ.App., 86 S.W.2d 864, 867, Zeigler and wife executed notes to the Federal Land Bank, payable in installments and effected fire insurance with loss payable to the bank. The property was damaged by fire; the insurance was paid to the bank; Zeigler requested that the funds be applied to past due installments, to taxes, etc., thus leaving the principal not due. The bank refused to do this, and applied the money on the installments delinquent and the balance on the principal of the debt, and, then foreclosed under the terms of the deed of trust for the balance. The El Paso Court of

920

Appeals (writ of error dismissed) held: "The funds paid over to the bank being the proceeds of a policy on the 150-acre tract, it became the duty, unless the owner of the land agreed otherwise, to apply them to the payment of the past-due installment and retain the balance to be applied upon the remaining indebtedness as it fell due. 26 C.J. § 589, p. 441; Thorp v. Croto et al., 79 Vt. 390, 65 A. 562, 10 L.R.A.(N. S.) 1166, 118 Am.St.Rep. 961, 9 Ann.Cas. 58, and cases cited." So is the case at bar: The owner agreed for the insurance money to be paid to Chas. T. Brackins, the holder of the notes as his interest might appear, thus, after the fire, the notes being past due, the Brookses had no right to assign the application of the money, other than to the payment of the notes. Brooks' subsequent assignment to House gave him no interest in the funds which belonged to Brackins, and the fact that the insurance company made the draft payable to Brooks, Brackins and House, jointly, did not change the legal status of the fund.

We have carefully considered the entire record, and, finding no reversible error, judgment of the court below is affirmed.

Affirmed.