reputation to the time after the defendant began working there.

[Ed. Note.—For other cases, see Disorderly House, Cent. Dig. §§ 21–25; Dec. Dig. ⊙⟹16.]

2. DISORDERLY HOUSE ⊙⟹17 — SUFFICIENCY OF EVIDENCE.

In a prosecution for aiding in keeping a house of prostitution, evidence *held* sufficient to sustain a conviction.

[Ed. Note.—For other cases, see Disorderly House, Cent. Dig. §§ 26–29; Dec. Dig. ⊙⟹17.]

Appeal from Wichita County Court; Harvey Harris, Judge.

E. C. Davis was convicted of aiding the keeping of a house of prostitution, and he appeals. Affirmed.

Ralph P. Mathis and W. Lindsay Bibb, both of Wichita Falls, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was convicted under an information charging him with aiding, assisting, and abetting the keeping of a house of prostitution and a house where prostitutes were permitted to resort and reside.

[1] Appellant objected to Ed Carnes being permitted to testify that the house with which he was charged with aiding and abetting the keeping had the reputation of being a disorderly house at the time he was acting as night clerk of the Royal hotel, and had that reputation before appellant began working there. The objection was directed at that portion of the testimony in which he said:

"I could not limit my knowledge of the reputation of this house as just since the defendant began working. It has been disorderly for a long time."

As the testimony shows the reputation of the house was disorderly when appellant began working there, and so continued all the time he was connected with it, the bill presents no reversible error.

[2] The court did not err in refusing to give peremptory instructions to acquit, as we think the testimony would justify a conviction. The reputation of the house was shown to be a house where prostitutes resorted and resided. Harrold Buster testified that the reputation of the three women he saw at this hotel was bad; that they were common prostitutes; that he had seen at least one of them in the reservation at Lillian Hall's. Lewis Scott testified he was porter at the Royal Hotel, and that appellant told him, "if I found any one that wanted a woman up there, to send them to him." Ed Carnes testified that he secured a room at this hotel, and said to the porter, Lewis Scott, that he was going down to the reservation to see the girls, when the porter replied, "Boss,. we have got any kind of girls you want at the hotel." The porter took him to his room, and in about 20 minutes a girl opened the door and came in.

The judgment is affirmed.

KROWER v. MARTIN. (No. 5676.)*

(Court of Civil Appeals of Texas. San Antonio. March 8, 1916. Rehearing Denied March 29, 1916.)

1. FRAUDULENT CONVEYANCES ⊙⟹47—BULK SALES LAW—"USUAL COURSE OF TRADE."

A sale by one formerly in the jewelry business who at the time of the sale had withdrawn therefrom, and who had mortgaged the goods sold and segregated them from his stock and trade, was not a sale in the "usual course of trade."

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 34; Dec. Dig. ⊙⟹47.]

2. CHATTEL MORTGAGES ⊙⟹186 — STOCKS IN TRADE—VALIDITY.

Vernon's Sayles' Ann. Civ. St. 1914, art. 3970, making void mortgages on stocks of goods exposed to daily sale where possession is retained by the mortgagor, does not apply where the goods mortgaged are segregated from the stock and possession delivered to the mortgagees, since a mortgage on such a stock was not void at common law.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 368; Dec. Dig. ⊙⟹186.]

3. FRAUDULENT CONVEYANCES ⊙⟹47 — BULK SALES LAW—WHEN APPLICABLE.

Where goods, having been segregated from the main stock, are mortgaged and possession delivered to the mortgagees, the Bulk Sales Law (Acts 31st Leg. c. 27; Vernon's Sayles' Ann. Civ. St. 1914, art. 3971), does not apply.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 34; Dec. Dig. ⊙⟹47.]

4. FRAUDULENT CONVEYANCES ⊙⟹47 — BULK SALES LAW—WHEN APPLICABLE.

The Bulk Sales Law does not apply to a sale of goods segregated from a stock in trade by the owner who was formerly a merchant, but who at the time of a sale was a farmer.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 34; Dec. Dig. ⊙⟹47.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Action by Leonard Krower against S. J. Martin for an injunction. Judgment for defendant, and plaintiff appeals. Affirmed.

Hertzberg, Barrett & Kercheville, of San Antonio, for appellant. Solon Stewart, of San Antonio, for appellee.

CARL, J. Appellant on December 4, 1915, made application for a writ of garnishment against appellee, which set forth, among other things, that on November 6, 1915, the plaintiff had filed suit against A. Levytansky for debt in the sum of $2,500, and interest, which debt was evidenced by a note dated September 25, 1914, and in answer to the writ of garnishment served on him appellee denied that he owed Levytansky anything, or that he had any effects in his hands belonging to him, and prayed that he be discharged, with his attorney's fees, etc. Thereupon appellant applied to the court, on December 8, 1915, for an injunction, and, as a basis for such injunction, alleged that appellee had in his possession goods, wares, and merchandise that he had purchased from said Levytansky in bulk, especially a lot of jewelry and mon-

ey, that appellee purchased about $11,000 worth of jewelry from Levytansky, which he still had, and that the "Bulk Sales Law" had not been complied with. It was alleged that Levytansky was a merchant and came within the provisions of the Bulk Sales Law, and did not give ten days' notice before making said sale. It was alleged that such sale was in fraud of Levytansky's creditors, and that Levytansky was insolvent, and it was also alleged that appellee was insolvent, and that appellant was without an adequate remedy at law. An injunction was prayed for restraining Martin from disposing of the merchandise, etc.

Appellee answered, admitting that he purchased a lot of jewelry from Levytansky about September 11, 1915, for which he paid Levytansky $11,500, the fair market value of the same, but denied that he purchased same in bulk, or that the same was a bulk sale. It was denied that Levytansky was a merchant; that it was not necessary to give any notice of the sale, because he was not then a merchant. It was also denied that appellee was insolvent.

The court heard evidence and denied the injunction on the ground that the merchandise bought by appellee had been segregated from the stock of merchandise by Levytansky, and had been mortgaged to various banks and individuals by the said Levytansky; that thereafter, while the stock was in the possession of the banks and individuals, Levytansky negotiated the sale to Martin, and with the money received Levytansky acquired possession of the stock and delivered it to appellee. The court found that the mortgaging of said stock and delivering possession to the mortgagees caused it no longer to be a part of the original stock of merchandise, and did not come within the provisions of the Bulk Sales Law, and that therefore the title to said goods had passed to appellee. From the refusal of that injunction this appeal is prosecuted.

The agreed statement of facts shows that prior to March, 1915, A. Levytansky was a jewelry merchant in San Antonio, but in March, 1915, he closed his place of business and took the stock of goods which he had left and sold it to one T. L. Griffith, except certain parts of the stock, including diamonds which he had previously mortgaged or pledged to the Citizens' Bank & Trust Company, Dwight Potter, a party in New Orleans, Gus Kray, S. J. Martin, and others, to secure the payment of borrowed money; the amounts so borrowed aggregating about $10,-000. The possession of the goods mortgaged was delivered to these mortgagees at the times the various loans were obtained, and these goods never again became a part of the stock of goods from which they were taken and were never exposed to sale. They remained with the mortgagees until appellee received them. On September 11, 1915, Mar-

tin bought all of the jewelry so pledged from Levytansky, and paid him therefor the sum of $11,500. Martin paid the wholesale price for this jewelry; the tags showing the retail price aggregated about $45,000. Martin paid Levytansky in checks, and out of the money received Levytansky paid off the mortgages against the property, and the possession of the goods was delivered to Martin, who since has sold about 60 per cent. of it for $8,500. These sales were made by Levytansky, and after Martin receives his $11,500 back his agreement is that Levytansky is to have one-half of all over that sum for his services in selling the goods. Martin has never been in the jewelry business, and has no expert knowledge of diamonds, and is engaged in farming and real estate business.

[1] The sale by Levytansky to Martin was not in the usual course of trade, for at the time Levytansky was not engaged as a merchant in the jewelry business or any other kind of mercantile business, he having gone out of business in March, 1915, and Martin did not demand and receive a list of Levytansky's creditors, showing their addresses and the amounts due each, etc., as required by the Bulk Sales Law, and ten days' notice was not given them. All of his creditors did not share in the proceeds of this sale to Martin. Levytansky was financially insolvent at the time, and Martin was at the time one of his creditors, and at the time this suit was filed Levytansky was insolvent.

Levytansky's store was closed on Commerce street in 1914, and later he opened a store on Alamo Plaza for a few months, and after closing that he opened an office in the State Bank & Trust Company building, where he offered for sale the remaining portions of stock until March, 1915, when he finally sold or disposed of the remainder of the stock to others than Martin, and went to farming, and was not in the mercantile business when Martin bought. Between March and September, 1915, Levytansky made efforts to sell the jewelry which was up as collateral for these loans, but did not go into the jewelry business after March, 1915.

[2] Under article 3970, Vernon's Sayles' Civil Statutes, a mortgage on a stock of merchandise exposed to daily sale, and where the mortgagor retains possession, is deemed fraudulent and is made void. This dates back to Acts 1879, p. 60, and it has been held that this statute applies to a part of a stock as well as to the whole. B. F. Avery Sons v. Waples, 19 Tex. Civ. App. 672, 49 S. W. 153. A mortgage on the stock, however, was not void at common law, but was only made so by virtue of the statute which says that such sale shall be void where the mortgagor retains possession and the goods remain exposed to daily sale. So it would not apply to a case like this, where the goods were segregated and possession delivered to the mortgagees.

[3] These goods, having been segregated from the main stock and pledged to the several mortgagees, and the validity of those mortgages not being attacked or questioned, were not a part of a stock of merchandise at the time Martin acquired them. Levytansky's right to sever these goods and pledge them to secure his debts by delivering possession is not attacked, but it is contended that the Bulk Sales Law would apply. If he had the right to mortgage the goods, he had the right to make that mortgage valid and binding by delivering possession of the goods, which he did. If the mortgagees had foreclosed those mortgages, the purchasers would undoubtedly have obtained a good title. In order to prevent such a foreclosure the mortgagor sells the goods at wholesale price and pays off the mortgagees.

[4] Not only this, at the time Martin bought the goods Levytansky was not a merchant and had not been for several months. The Bulk Sales Law does not apply to this case, because it has reference to sales made out of a stock of merchandise exposed to sale. These goods were placed to secure debts, in such manner that it was not obnoxious to the statute as to void sales or mortgages, and then they ceased to be a part of the stock of merchandise, because they were segregated. And they never did resume their place as a part of a stock of merchandise exposed to sale. For this reason the Bulk Sales Law does not apply. Levytansky was not a merchant at all, but was a farmer at the time of the sale to Martin.

The judgment is affirmed.

---

&⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes