## LAREDO NAT. BANK v. STEINHARDT.
### (No. 8173.)

Court of Civil Appeals of Texas. San Antonio. Feb. 27, 1929.

Rehearing Denied March 27, 1929.

Gordon Gibson, of Laredo, for plaintiff in error.

Denman, Franklin & Denman, of San Antonio, for defendant in error.

FLY, C. J. This is a suit on eight promissory notes for $100 each, alleged by defendant in error to have been executed to him by L. W. Beckham, against whom and plaintiff in error the action was filed by defendant in error, to recover the debt, interest, and attorney's fees, and to foreclose a mortgage lien on a certain Jordan automobile Playboy roadster, giving model, serial number, and motor number. The jury in the case was instructed to render a verdict in favor of defendant in error for $905.39, with a foreclosure of the lien upon the automobile, which was accordingly done and judgment rendered thereon. This appeal has been perfected by the bank alone.

The facts show that on December 23, 1926, L. W. Beckham bought from defendant in error, doing business as the Crockett Automobile Company, a certain automobile described as "one model J. Jordan Playboy Roadster," and for a balance of $1,000 unpaid on the automobile a chattel mortgage was executed and filed in the county clerk's office of Webb county, where Beckham resided. Beckham was a dealer in automobiles and had bought a number of automobiles from defendant in error for sale at times preceding this sale, but the automobile in question was bought for his personal use, and confirmatory of this it was recited in the mortgage: "This car is purchased for my own personal use and not for the business." In further evidence that a sale was not to be made of the car it was provided the payments on the car were to be made monthly. The car was not sold for resale, but, as indicated in the mortgage, was sold to Beckham for his private use and was not exposed or offered for sale, but was used by Beckham personally.

This writ of error was obtained on the proposition that the mortgage given by Beckham on the automobile herein described was null and void because he was a dealer and had exposed the automobile for sale. The proposition rests on the application of article 4000, Revised Statutes, to the facts of this case. That article provides: "Every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void." The testimony did not show that the automobile was any part of a stock of goods or merchandise daily exposed for sale, but, on the other hand, it affirmatively appeared that the automobile was specially ordered and used by Beckham for his private use. It was not exposed for sale. It was not contemplated by the statute that a dealer could not buy an automobile for his own use and give a mortgage on it. Mortgages, such as are made void by the statute, were not void at common law, and the statute will be strictly construed so as not to include any property except that described in the statute. Krower v. Martin (Tex. Civ. App.) 184 S. W. 511. The automobile in question never became a part of "any stock of goods, wares or merchandise daily exposed for sale." The car in controversy was not one used in the general trade, but had "a special carburetor, special valve connections, special timing gear shaft, special wheel, special tires and special pistons."

The evidence was sufficient to show that the Playboy roadster was not at the time of sale nor ever thereafter placed in stock for sale, and if it be true, as a witness for plaintiff in error swore, that the car was on display when plaintiff in error obtained its mortgage on the car, and was afterwards put in stock for sale, it has effectually proved its mortgage was null and void. It would be rank injustice to hold the first mortgage null and void because the automobile was exposed for sale, as provided in article 4000, and substitute for it a second mortgage on the same automobile. Plaintiff in error, like Samson, in pulling down defendant in error's structure, pulled down its own and completely destroyed its lien.

When defendant in error's mortgage was executed the automobile was not a part of a stock of goods owned by Beckham, and the lien was vital and attached itself to the automobile, and the after acts of Beckham could not destroy a mortgage executed in good faith to defendant in error. It certainly would be superior to a mortgage given on the automobile while it was being exposed for sale. If any lien attached to the automobile when it was removed from the salesroom it must have been the first and not the second mortgage. It may be stated that the evidence is very

unsatisfactory, if not totally insufficient, to show that the property on which plaintiff in error took its mortgage was the same upon which defendant in error took his mortgage.

The judgment will be affirmed.

### On Motion for Rehearing.

[3] Plaintiff in error cannot on rehearing shift its position and with any show of success seek to change the plain language of its pleadings and propositions. In the opinion of the court it was stated: "This writ of error was obtained on the proposition that the mortgage given by Beckham on the automobile herein described was null and void because he was a dealer and had exposed the automobile for sale." This statement was founded upon all three of the propositions copied into the brief of plaintiff in error, which claimed that the mortgage given defendant in error was void because it was given by the owner of a stock of goods exposed to sale. If that was not the point in the propositions there was no point, and there was no statement that the mortgage to defendant in error was not executed in good faith as is now claimed in the motion for rehearing. The only language in reference to anything showing bad faith on the part of the seller that could be tortured into such a charge was that he knew that the car was being exposed for sale. The brief was based on the nullity of the mortgage on account of exposure of the automobile for sale in the regular course of business.

Plaintiff in error set up a cross-action against defendant in error, in which it was alleged that Beckham owed plaintiff in error $2,000 as evidenced by a promissory note, that it was due and unpaid, and then alleged: "That to secure said note said Beckham delivered to this defendant the automobile in question as hereinbefore in this defendant's special answer alleged, thereby giving this defendant a lien thereon. That such lien of this defendant is superior to the asserted lien, if any, of plaintiff." The prayer was: "Wherefore this defendant prays for judgment against defendant Beckham for its debt and against said defendant and plaintiff for foreclosure of its lien and for costs and general relief." It would naturally be concluded from the pleadings of plaintiff in error that it was claiming a lien upon the automobile, but according to the motion for rehearing this court was utterly wrong in indulging in any such conclusion. We copy from the motion: "The court erred in saying that plaintiff in error sought to 'substitute its second mortgage' and like Samson in pulling down defendant in error's structure pulled down its own and completely destroyed its lien, because plaintiff in error never had or claimed a mortgage, first, second or third, but had the actual car itself of which it was a bona fide

purchaser for full value." Alexander, president of the Laredo National Bank, did not in his testimony claim to have purchased the car, but stated that it was placed in a warehouse as security for its debts. The claim of having purchased the automobile was never presented until it was written into the motion for rehearing. It was not so written in the pleadings and of course was not so shown in the testimony. The motion seems to presume on the credulity, with which it charges this court, but credulity cannot be stretched so far as to accept statements made in the motion for rehearing which are directly in conflict with allegations and proof.

The motion for rehearing is overruled.