## YEAGER v. DALLAS COFFIN CO.

### No. 8730.

Court of Civil Appeals of Texas. San Antonio.

Feb. 3, 1932.

Rehearing Denied March 2, 1932.

Van Haile McFarland, of Eagle Pass, for appellant.

David E. Hume, of Eagle Pass, for appellee.

SMITH, J.

After obtaining a judgment in a Dallas county court against R. W. Hedleston, appellee garnished appellant, who had purchased Hedleston's undertaking business, stock, appliances, and office furniture. Appellant answered, as garnishee, denying that he was indebted to Hedleston or had possession of any of the latter's effects. Appellee traversed that answer, alleging and conclusively proving that appellant had purchased Hedleston's stock in bulk without complying with the provision of the Bulk Sales Law (article 4001, Rev. St.) requiring the seller to furnish him with a list of the seller's creditors, and the amount of the indebtedness owing to each such creditor, and further requiring the pur-

chaser to give ten days' written notice to such creditors of his intention to make the purchase. To this appellant interposed the defenses (1) that the stock of goods was not within the class of merchandise contemplated in the Bulk Sales Law, but such stock was only an incident to appellant's profession as a funeral director, and (2) that appellee was estopped to make such defense, because through its authorized agent it stood by in silence and permitted the sale to be consummated upon the seller's representation that there was no indebtedness outstanding against the stock. At the conclusion of the evidence the trial court directed a verdict against appellant for $650, and upon that verdict rendered judgment that "The garnishee, Claude Yeager, Defendant herein, be, and is hereby required to deliver up to the sheriff or any constable presenting an execution herein in favor of plaintiff, the effects which passed into his hands by means of the transfer to him by Hedleston, or so much of them as may be necessary to satisfy this judgment, and in the event any of such articles shall have been converted or disposed of by said garnishee subsequent to the service upon him of the writ of garnishment then plaintiff shall have and recover of and from said garnishee the value of such articles so disposed of or converted shall have execution against any other property of said garnishee until the amount of the value of the articles so disposed of or converted shall have been made, and that plaintiff recover of and from said garnishee his interest upon the original judgment from its date together with all costs of this action for which plaintiff may have execution."

This is the second appeal in this cause. Dallas Coffin Co. v. Yeager (Tex. Civ. App.) 19 S.W.(2d) 156.

■ The decisions in this state have not gone very far towards definitely determining the character of merchandise contemplated in the statutory prohibition against the transfer of merchandise in bulk without notice to creditors of the transferrer. It may be said, generally, however, that the law applies to merchandise which constitutes the merchant's current stock in trade, which is exhibited for sale indiscriminately in the usual course of trade, and which may not be legally mortgaged so as to impair the title of purchasers in this usual course of trade.

The theory of the law is that, as the wholesaler may not protect his claims by retaining title or liens upon such current stock, in derogation of the free retail alienation thereof in the usual course of trade and in the regular and usual prosecution of the merchant's business, he will be protected against the sale thereof in bulk whereby he would be left wholly without remedy.

■■ We have no doubt that caskets and accessories thereto constituted a stock of merchandise within the contemplation of the Bulk Sales Law. Those articles were constantly kept in stock and exhibited and offered promiscuously for sale at retail, at a profit, to the public, and thereby met the test bringing them within the operation of the statute.

It is true that in a majority of transactions by appellant the sale of caskets and accessories was accompanied by the dealer's personal services and the use of his facilities, in preparing bodies for burial, in dressing them in the habiliments of death, in preparing graves for the reception, in transporting the bodies to graves, and in conducting funerals. And appellant contends that these personal services rendered the sale of caskets and accessories but an incident to his profession as an undertaker, and exempted them from the operation of the law. We overrule this contention, for it is perfectly obvious that the retail sales of caskets and accessories constituted the principal business of appellant, and that the personal services were but incidental to that business. Those articles were sold at retail without any change of character by the labor or mechanical skill of the dealer, and cannot reasonably be construed as "tools, fixtures, and supplies * * * used by contractors only in connection with their repair and job contract business," as in the case of Axtell v. Word (Tex. Civ. App.) 29 S.W.(2d) 421, relied upon by appellant. In a similar case, and under a statute identical with ours, the Supreme Court of Michigan (Bank v. Van Allsburg, 165 Mich. 524, 131 N. W. 101, 102) aptly stated the appropriate rule as follows: "We think that 'merchandise,' as used in this act, must be construed to mean such things as are usually bought and sold in trade by merchants. Measured by this standard, the caskets, steel vaults, robes, and casket hardware must fall within the meaning of that term. These articles were bought to sell again. They were not purchased with the intent to keep or use in his business. The fact that they were not sold singly, but were usually sold in connection with a casket, would not take away from them the character of merchandise."

■ But we conclude that many of the articles subjected in the judgment below to the operation of the statute should have been excluded from that operation. The stock in question as listed in the judgment comprises twenty-eight separate items. Twelve of those items are not described by any language or symbols by which the character of the goods may be determined, for they are identified only by figures and signs, such as "1 No. 5575 —$65.50," and "2 B—$40.00." Whether those articles are caskets or something else cannot be determined, and it may be said that as to

them the judgment is too indefinite to be enforceable.

■ The remaining items, however, seem to be sufficiently described to permit of their identification. They include "1 casket throw, 1 half Couch, 1 desk, 1 office suit, 1 typewriter, 2 church trucks, 1 cooling board. * * *" It would seem obvious that such articles do not constitute merchandise or "fixtures" contemplated in the law. Presumably they were not purchased or offered for resale to the retail trade, nor did they become "fixtures," which in the usual sense means such chattels as merchants usually "possess and annex to the premises occupied by them, to enable them the better to store, handle, and display their goods and wares. Such chattels when annexed to the premises become fixtures. They are generally removed without material injury to the premises at or before the end of the tenancy." Bowen v. Quigley, 165 Mich. 337, 130 N. W. 690, 691, 34 L. R. A. (N. S.) 218.

Those articles were purchased, rather, to be retained and used in conducting the merchant's general business as a dealer in caskets and accessories and in performing personal services in his profession as an undertaker. They are such, in short, as would permit the wholesaler to retain title to them, or secure his claim thereon by liens.

■ The Bulk Sales Law is clear and somewhat drastic in effectuating restrictions upon the free alienation of property, and because of that quality should be strictly construed against those invoking its operation, and liberally in favor of those upon whom it is intended to operate adversely. Under such construction the courts will limit its operation to only such merchandise as comes clearly within its provisions. Applying that construction in this case we conclude the judgment should not be upheld, since most of the articles sought to be taken from appellant are not sufficiently described to permit their allocation to the class of merchandise affected by the act, and most of those sufficiently described clearly place them without that class. This question was not raised in the former appeal, nor was the record in that appeal such as to bring that question into the case.

We are inclined to the opinion that the trial court correctly disposed of the question of estoppel, but we will not foreclose that defense by definite decision here. We think it proper to add that the evidence upon the issue of estoppel was probably insufficient because of the absence of a showing that appellee's salesman knew of the condition of the account of appellee against Hedleston, or that the nature of his duties to appellee were such as to charge him with such knowledge.

For the reasons stated the judgment is reversed, and the cause remanded.