**SINKIN v. BUTLER BROS.**

No. 9429.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 31, 1934.

Rehearing Denied Dec. 12, 1934.

Schlesinger & Schlesinger and Lionel Goodstein, all of San Antonio, for appellant.

Robt. H. Rice and R. G. Rice, both of San Antonio, for appellee.

SMITH, Justice.

The Laredo store and stock of merchandise of J. C. Benavides & Bro., a partnership, was "badly damaged" by fire on December 6, 1931. The fire resulted in the permanent closing of the store, and the merchandise "remaining in said store which had not been destroyed was cleaned and inventoried by the Underwriters Salvage Company." The salvaged merchandise was not thereafter exposed for sale at retail by the owners. But, in April, 1932, the owners sold and transferred it in bulk to N. Sinkin, appellant herein, for cash. Subsequently Sinkin removed the salvaged merchandise to another building and sold it at a "fire sale."

It is conceded that the parties to the transaction did not even attempt to comply with the provisions of the Bulk Sales Law. Article 4001 et seq., R. S. 1925. The trial court found from the evidence, however, that the

parties acted in good faith in the transaction.

At and prior to the fire, Benavides & Bro. were indebted to Butler Bros., appellee, who brought suit and recovered judgment therefor against Benavides & Bro. Thereupon Butler Bros. procured a writ of garnishment against Sinkin to impound and recover the amount of said debt and subject the same to the satisfaction of their judgment against Benavides & Bro., upon the theory that the sale of the merchandise was made to Sinkin in violation of the Bulk Sales Law. The trial court held that the sale was one within the contemplation of said law, and in violation thereof, and was therefore void and in legal fraud of the creditor, to whom Sinkin as garnishee was adjudged liable for the amount of the debt. From a judgment rendered against him in pursuance of this holding, Sinkin has appealed.

The question of estoppel is not in the case as presented here.

The controlling question is, Was the stock of merchandise, at the time and in the condition of its sale in bulk to appellant, such a "stock of merchandise" as to come within the purview of article 4001, which renders void as to creditors the sale in bulk of a stock of goods while exposed to sale at retail?

■ The statute, being in derogation of the common-law right of free alienation of property, must be strictly construed against litigants who invoke its benefits. 20 Tex. Jur. p. 560, § 203, and authorities there cited.

■ And in deference to that rule it has been held, generally, and by various processes of approach, that, to bring a sale under the condemnation of the statute, it must be made to appear that at the time of its transfer the merchandise conveyed must be in its original character, unchanged by the labor or mechanical skill of the dealer, and exposed to daily sale, in parcels, to the public in the ordinary course of a retail business. 27 C. J. pp. 880, 882, §§ 889, 890; 12 R. C. L. p. 526, § 561 (Per. Supp. p. 3144); 20 Tex. Jur. p. 567, § 212; Yeager v. Dallas Coffin Co. (Tex. Civ. App.) 46 S.W.(2d) 1016; Id. (Tex. Civ. App.) 69 S. W.(2d) 493; Krower v. Martin (Tex. Civ. App.) 184 S. W. 511; Axtell Co. v. Word (Tex. Civ. App.) 29 S.W.(2d) 421.

It is conceded that, up to the time of the fire and consequent involuntary closing of the store, the stock of merchandise in question was one within the statute prohibiting sale in bulk except upon the notice therein prescribed.

It is also obvious from the record that a substantial part of the Benavides stock was totally destroyed by the fire, and that remaining, though "badly damaged," was salvaged, and four months later sold in bulk to appellant.

The precise question presented in the appeal, then, is whether the recovered portion of the stock, after being damaged, withdrawn from the retail trade, segregated, salvaged, and stored, retained, or again assumed, its character of merchandise, the sale of which in bulk and without notice is prohibited by statute.

The question is by no means without its difficulties. It is one of first impression here, because, with its peculiar complications, it has not been decided in this jurisdiction, or in any other, so far as pointed out by counsel, or ascertained by the investigations made by this court.

A decision of the question cannot properly be reached without considering, and construing together, both articles 4000 and 4001 of the Statutes:

"Art. 4000. (3970) (2548) *Chattel Mortgage.*—Every mortgage, deed of trust or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the *regular course* of business of such merchandise, and contemplating a continuance of the possession of said goods and control of said business, by sale of said goods by said owner, shall be deemed fraudulent and void.

"Art. 4001. (3971) *Sales in Bulk.*—The sale or transfer in bulk of any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conducting of said business otherwise than in the ordinary course of trade, and in the regular prosecution of the business of the seller or transferor, shall be void as against the creditors of the seller or transferor, * * *" except after notice to the creditors of the seller as therein prescribed.

■ The object of article 4000 is to enable the public to freely purchase articles of merchandise from retail stores with the assurance of the law that their title to the purchased articles is in nowise incumbered by the claims of creditors; thus facilitating the free and unhampered barter and sale of merchandise at retail.

The restriction, in article 4000, upon the common-law right of the creditor to protect himself by reserving title, or fixing a lien upon articles to be thus sold at retail, exists

no longer after the merchandise is withdrawn by the owner from the retail trade, and is not by him again "exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods and control of such business, by sale of said goods by said owner." In short, the creditor can have no enforceable lien upon a stock, or part of a stock, of merchandise, so long as it occupies the status prescribed in said article 4000.

The corollary is that, if the stock never attains, or ceases to occupy, that status, the creditor is at liberty to procure or fix a lien upon it, and enforce his claim thereon at will.

So long as the right to put a lien upon the exempt stock is denied the creditor, he is protected by article 4001, the Bulk Sales Law, which condemns the sale of the stock, in bulk, by the owner, except after notice to the creditor.

But this protection of the bulk sales provision is available to the creditor only so long as the stock retains the status prescribed in article 4000. Article 4001 is intended to protect him only while he is rendered helpless by the provisions of article 4000. Yeager v. Dallas Coffin Co. (Tex. Civ. App.) 46 S.W. (2d) 1016, 1017. In the cited case it was said: "The theory of the law is that, as the wholesaler may not protect his claims by retaining title or liens upon such current stock, in derogation of the free retail alienation thereof in the usual course of trade and in the regular and usual prosecution of the merchant's business, he will be protected against the sale thereof in bulk whereby he would be left wholly without remedy."

It is not intended to here say that a retail merchant may voluntarily close the doors of his store, and, retaining his stock of merchandise intact, sell it in bulk the next day, or the next week or month, or later, and pocket the proceeds, without complying with the provisions of the Bulk Sales Law. The contrary has been held to be the law in this state. Teich v. McAuley (Tex. Civ. App.) 212 S. W. 979 (dismissed). We have no criticism to make of that holding, which apparently reached the justice of the case, although the apparent facts of the case may not have brought it strictly within the terms of the law.

■ But here we have, not a voluntary withdrawal of the stock from current sale in parcels, but an involuntary closing and destruction of a retail business occasioned by a presumably unforeseen calamity. Nor have

we to consider the sale in bulk of a stock of merchandise which had been held intact from the time of its withdrawal from the retail trade. But rather we are considering the segregated remnant which had been salvaged from the ruins of the destroyed business.

We conclude that under the facts of the case as presented in this court the segregated and salvaged remnants of the original retail stock did not constitute such stock of merchandise as that contemplated in either article 4000 or article 4001, and therefore that its transfer in bulk at the time and in the condition of its sale was not in violation of the Bulk Sales Law.

This conclusion requires a reversal of the judgment appealed from, but, as the case does not appear to have been fully developed in all its aspects, and particularly as the matter of attorney's fee pleaded by appellant was not adjudicated below, the cause will be remanded for further proceedings not inconsistent with this opinion.

MURRAY, Justice.

I do not concur in the above opinion.

The record discloses that the stock of merchandise herein involved was unquestionably such a stock of merchandise as is described in article 4001, up to the time of the fire and the closing of the business. It occurs to me that the closing of the business would not take this stock of merchandise out from under the provisions of article 4001. This was the holding in Teich v. McAuley (Tex. Civ. App.) 212 S. W. 979. It will be noted that the phrase "daily exposed to sale" is used in article 4000, but is conspicuous by its absence in article 4001.

There is a very sound reason for eliminating this phrase from article 4001. The purpose of this article is to prevent merchants from disposing of the whole, or any substantial part, of their stock of goods in bulk and thereby defraud their creditors. If a merchant could close his door and thereby take his stock of merchandise out from under the provisions of this article, and then dispose of same in defraud of creditors, the article would serve no useful purpose. It would be immaterial whether the place of business was closed voluntarily or as the result of a fire.

It is clear in this case that both the merchant and the purchaser, Sinkin, realized that this stock of merchandise was subject to the provisions of article 4001. They placed the following provision in the bill of sale:

"This sale is made by me for the purpose of paying my bona fide debts and all creditors will share in the net proceeds in proportion to their respective claims without preference, for which reason I have represented to the purchaser that this sale comes within the exception to the provisions of article 4001, R. S. 1925."

Appellee was not paid any portion of this purchase price, but it was used to pay preferred creditors. Such arrangement does not meet the requirements of article 4001. H. O. Wooten Grocery Co. v. Coleman et al. (Tex. Civ. App.) 32 S.W.(2d) 279.

The majority opinion herein, in effect, overrules Teich v. McAuley, supra. If fraudulent conveyances of stocks of merchandise are to be prevented by our "Bulk Sales Law," the rule stated in Teich v. McAuley must be followed.

For the reasons above stated, I respectfully dissent to the majority opinion herein.