### In re STUCKY TRUCKING & RIGGING CO.

(District Court, D. New Jersey. March 3, 1917.)

1. CHATTEL MORTGAGES ⬅➡92—VALIDITY—CREDITORS.

A chattel mortgage, though invalid as to the mortgagor's creditors under the New Jersey Chattel Mortgage Act (1 Comp. St. 1910, p. 463), is valid as between the immediate parties to the mortgage.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 152.]

2. INSURANCE ⬅➡581—FIRE POLICIES—PROCEEDS—RIGHT TO.

A chattel mortgagee, whose mortgage was invalid as to creditors of the mortgagor, insured his interest in the mortgaged property against fire; the policy providing that the loss, if any, should be payable to the mortgagee. A fire occurred within less than four months of the bankruptcy of the mortgagor and the mortgagor's trustee in bankruptcy claimed the proceeds of the policy. *Held* that, as an insurance policy is a personal contract of indemnity between the insurer and the insured, and in the absence of any equitable lien, the proceeds will pass only to those for whom provision is made in the contract or their assignees, the trustee in bankruptcy was not entitled to the proceeds of the policy, though the chattel mortgage was invalid as to the bankrupt's creditors, and so was subject to attack by the trustee, for the mortgage was valid as between the mortgagee and mortgagor, and the policy only insured the mortgagee's interest.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1444–1447.]

3. BANKRUPTCY ⬅➡143(11)—FIRE POLICIES—INSURABLE INTEREST.

In such case, the trustee in bankruptcy could not obtain the proceeds of the policy on the ground that the invalidity of the mortgage deprived the mortgagee of an insurable interest, for that defense could be raised only by the insurance company.

4. BANKRUPTCY ⬅➡143(11)—RIGHT TO PROCEEDS—MORTGAGEE.

Where a chattel mortgage was taken in the name of another for the benefit of the actual mortgagee, and the nominal mortgagee admitted that he was only a trustee, the mortgagor's trustee in bankruptcy is not entitled to the proceeds of the policy on that ground.

5. PAYMENT ⬅➡39(6)—APPLICATION.

The bankrupt, after giving a bank a chattel mortgage as collateral security, incurred further indebtedness to the bank. Thereafter a portion

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the bankrupt's property was destroyed by fire, and it assigned to the bank all sums to be due on fire policies. There was no direction that the bank should apply such sum on the indebtedness secured by the chattel mortgage, and it applied the recovery to the unsecured indebtedness; the parties treating the mortgage as still existent. *Held*, that the indebtedness secured by the chattel mortgage could not be treated as satisfied, so that the trustee of the bankrupt would, the bank having subsequently insured its interest in the mortgaged property and another fire having occurred, become entitled to the proceeds under the second policy.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 111.]

6. BANKRUPTCY ☞228—PROCEEDINGS—REVIEW.

On petition to review an order of the referee in bankruptcy, a matter not disposed of by him cannot be considered.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387.]

In Bankruptcy. In the matter of the bankruptcy of the Stucky Trucking & Rigging Company. On petition to review an order of the referee finding that a certain fund should be paid to the trustee in bankruptcy for the benefit of the bankrupt's general creditors, free from any lien or claim of the Second National Bank of Hoboken, N. J., or the Union Trust Company of New Jersey. Order of referee reversed.

Samuel Heyman, of Jersey City, N. J., for Second Nat. Bank of Hoboken.

George Ralph Hendrickson, of Jersey City, N. J., for Union Trust Co. of New Jersey.

Harry Lane, of Jersey City, N. J., for trustee in bankruptcy.

HAIGHT, District Judge. This controversy relates to the disposition to be made of a fund realized from several fire insurance policies, which covered certain personal property of the bankrupt that was destroyed and damaged by fire prior to the institution of the bankruptcy proceedings. About June 1, 1914, the bankrupt borrowed, directly or indirectly, about $7,700 from the Second National Bank of Hoboken, N. J. (hereinafter referred to as the "Bank"), on its promissory note, indorsed by certain of its officers. It also gave, as collateral security for the loan, a chattel mortgage for the same amount on certain of its property. The mortgage was made to one Philip Stephan, an employé of the Bank, who, admittedly, has at all times held it as trustee for the Bank. The note was renewed several times, and finally, when it became due in March, 1915, was protested for nonpayment. In the meantime the bankrupt had incurred considerably more indebtedness to the bank, represented by its own promissory notes which had been discounted by the bank, as well as a few notes upon which other parties were the makers. On February 13, 1915, a part of the bankrupt's personal property was destroyed and damaged by fire, and shortly afterwards it assigned to the Bank all of the moneys due or to grow due to it on the fire insurance policies which it held on the property so destroyed and damaged. The amounts thus due were subsequently adjusted and paid to the Bank by the insurers. But before these payments were made, and on May 24, 1915, another fire occurred in the premises then occupied by the bankrupt, and resulted in the destruc-

tion of and damage to certain of its personal property, which was covered, as was also that damaged in the first fire, by the chattel mortgage. Prior to the second fire the Bank, without previous express authorization from the bankrupt, had procured certain policies of insurance to cover the property which remained after the first fire. These policies were made out in the name of the bankrupt as owner, but each contained a standard New Jersey mortgage clause providing that the loss, if any, should be payable to Philip Stephan and the White Shoe Company, mortgagees, as their interests might appear. The premiums were, in the first instance, paid by the Bank. The referee has, however, found that they were subsequently charged to the bankrupt on the books of the Bank. If my decision depended upon this determination of fact, I would have great difficulty in finding support for it in the evidence. However, for the purposes of this case, I will assume that such was the fact. On August 21, 1915, the petition in bankruptcy was filed. Prior to that time the Bank had received all of the money due on the policies which were in force at the time the first fire occurred, and a part of that due on the policies which it had taken out, as before mentioned, subsequent to the first fire. The balance realized from these latter policies is in court, and is the fund now in controversy. It also appears that in the latter part of December, 1914, the bankrupt gave a chattel mortgage to a concern known as the "White Shoe Company," which mortgage was subsequently assigned to the Union Trust Company of New Jersey (hereinafter referred to as the "Trust Company"), as collateral security for an indebtedness due to the latter from the White Shoe Company. This mortgage is, admittedly, subsequent to that of Stephan, as is also the claim of the Trust Company subsequent to that of the Bank to any part of the fund now in court. Although there was a question before the referee as to whether this court had jurisdiction to determine, in a summary proceeding, whether the Bank had any lien on or claim to the fund, that question has now been waived and jurisdiction consented to. Neither is the decision of the case embarrassed by any question of preference. The referee held that both of the chattel mortgages were invalid, as respects the trustee representing the creditors of the bankrupt, under the New Jersey Chattel Mortgage Act (1 N. J. Comp. Stat. 463), and that therefore neither the Bank nor the Trust Company had any lien on or claim to the insurance moneys. The reasoning by which he reached the latter conclusion is that the rights of the parties to the insurance moneys were regulated by the mortgagee clauses in the policies, and that as the Bank and the Trust Company had no rights as mortgagees in respect to the chattels covered by the insurance policies, they had no claim on the insurance moneys.

[1, 2] I am unable to concur in his conclusion. The fundamental fallacy in it seems to me to be a failure to recognize that both mortgages, as between the mortgagors and the mortgagees, were entirely valid and enforceable, as well as the nature of the contract of insurance. If the mortgages were invalid, as I shall assume, for the purposes of this argument, that they were to the extent found by the referee, they were so only as to creditors and the trustee in bankruptcy representing the latter. If they had been invalid as respects the mort-

gagor, as distinguished from its creditors (and of this there is no claim). so as to be really nonexistent, the referee's conclusion might be sound, on the theory that the mortgagees' rights under the policies were, by the terms of the latter, dependent upon the existence of the mortgages. It is too well settled to need the citation of authorities that an insurance policy is a personal contract of indemnity between the insurer and the insured, and, in the absence of an equitable lien, the proceeds thereof are payable only to those for whom provision is made in the contract or to their assignees. Each mortgagee, therefore, had, as between it and the bankrupt, an interest by virtue of its mortgage in the property covered by the insurance policies, and therefore, as between the insurance companies, the bankrupt and the mortgagees, the latter, by the terms of the policies, were entitled to any moneys which became due on the policies, by reason of a fire, to the extent of the amounts due on their respective mortgages. Of course, the trustee in bankruptcy has succeeded to the rights of the bankrupt, but they, by the provisions of the policies, were postponed to those of the mortgagees. There was nothing in the policies (so far as the evidence discloses) to make the payment of any losses to the mortgagees dependent upon whether the mortgages were valid as respects creditors of the mortgagor. Nor is there any statute of New Jersey, nor anything in the Bankruptcy Act, as far as I am aware, to that effect. Hence, I am unable to perceive how the mere fact that a mortgage may be invalid as to creditors can nullify the indemnity agreements between the insurance companies, the insured and the mortgagees, to which the creditors were not parties nor privies, except as respects the bankrupt through the trustee.

[3] If the invalidity of the mortgages as respects creditors can be said to have deprived the mortgagees of an insurable interest, that could be urged only by the insurers. Wheeler v. Insurance Co., 101 U. S. 439, 441, 25 L. Ed. 1055. The referee's conclusion seems to me, without warrant, to read into the insurance contract a provision which is not there, namely, "that the loss shall be payable to the mortgagees, if the mortgages are valid as respects creditors." I think these views, although perhaps differently expressed, are in harmony with those entertained by Judge Hale in Hanson v. Blake Co., 155 Fed. 342 (D. C. D. Me.), where the facts as to Mrs. Young's claim were very similar to those in the case at bar.

[4] I see no merit in the trustee's contention that the Bank has no claim because the mortgage was made to Stephan, and the loss under the policies, by their terms, made payable to him. Stephan, admittedly, acted only as trustee for the Bank, and whatever rights he had inure, in equity, to the benefit of the Bank. He does not question this, and it certainly, therefore, does not lie in the mouth of the trustee to do so.

[5] Nor can I find, as urged by the trustee, any evidence to justify the conclusion that the mortgage has been fully paid off by the moneys received by the Bank on the insurance policies which were in existence at the time of the first fire. The amounts due on these policies were expressly assigned to the Bank after the fire took place, and more than four months before the bankruptcy proceedings were instituted, for the purpose of "securing the indebtedness amounting to $19,408 to the

Second National Bank of Hoboken, N. J." It is true that there was included in this indebtedness the amount due on the note which the mortgage was given originally to secure, but there was nothing in the assignment, nor, so far as the evidence shows, was there any agreement between the parties, that these moneys should be applied in satisfaction of the mortgage. On the contrary, it seems entirely clear that it was the intention of the parties that they should not be. The mortgage was treated as still existing, and the moneys received on the first-mentioned policies have been applied by the Bank, as under the circumstances it had a right to apply them, on the part of the indebtedness not secured by the mortgage.

I am forced to the conclusion, therefore, that the Bank is entitled to the fund now in court to the extent necessary to pay the amount due upon the Stephan mortgage. If there is any balance, it should go to the Trust Company. In reaching this conclusion I have not attempted to determine whether the referee's conclusion—that the two chattel mortgages were invalid as to creditors—is correct, because it has seemed to me, for the reasons before stated, that it is quite immaterial as to whether they were or not. The referee's order will, accordingly, be reversed, and he will be directed to enter an order in accordance with these conclusions.

[6] Certain chattels of the bankrupt came into the possession of the trustee and were sold by him free and clear of the mortgages, pursuant to an order of the referee, which provided that the liens of the mortgages, if any, should attach to the proceeds. The Bank makes no claim, by virtue of its mortgage, to any part of the fund thus realized, but the Trust Company does. I, however, cannot find in the record before me any order of the referee adjudging that the Trust Company is not entitled to any part of this latter fund, although in his conclusions regarding the disposition of the insurance fund he held that the Trust Company mortgage was invalid as to creditors. In the absence of an order adjudging that the Trust Company has no lien upon the fund realized from the sale of the chattels, I do not feel at liberty, in this proceeding, to pass upon that question, as there is nothing before me on that point to review.