In re HELICOPTER AIR TRANSPORT, Inc.

No. 6877a.

United States District Court
D. New Jersey, Camden Division.

Sept. 29, 1949.

Milton, McNulty & Augelli, Jersey City, N. J., Thomas McNulty, Jersey City, N. J., for A. R. F. Inv. Co., petitioners on review.

William B. Kramer, Woodbury, N. J., Starr, Summerill & Davis, Camden, N. J., Sidney McCord, Jr., Camden, N. J., for American Nat. Bank & Trust Co.

Saul, Ewing, Remick & Saul, Philadelphia, Pa., Thomas P. Mikell, Philadelphia, Pa., for Pennsylvania Co. for Banking & Trusts.

MADDEN, District Judge.

This is a review of an order of the Referee in Bankruptcy disposing of insurance funds upon a wrecked helicopter, belonging to the Bankrupt. The facts are as follows:

On October 18, 1947, the Helicopter Air Transport, Inc. filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. A suitable plan was not presented and the corporation was declared a bankrupt on February 6, 1948.

During its business life the Bankrupt was the owner of several helicopters, two of which are involved in this litigation.

On September 13, 1946, the Bankrupt obtained a loan of $32,000 from the American National Bank and Trust Company of Chicago (hereinafter called American) and as security gave a chattel mortgage upon a Sikorsky helicopter, license No. NC92804, owned by it.

At or about the time of this loan the Northern Assurance Company, Ltd., issued an all risk insurance policy in the sum of $48,000 upon this helicopter with the Bankrupt as the assured. This policy contained a provision as follows: "The insured is the sole and unconditional owner of the aircraft except mortgage held by the American National Bank and Trust Company of Chicago. Any loss hereunder is payable as interest may appear to the insured and the American National Bank and Trust Company of Chicago whose address is 33 North LaSalle Street, Chicago 90, Illinois."

The chattel mortgage was recorded with the Department of Commerce, Civil Aeronautics Administration on November 1, 1946 as document No. 254434 and was subsequently recorded as a chattel mortgage in the Register of Deeds Office for Camden County, New Jersey, on May 21, 1947.

On or about December 28, 1946, the Bankrupt obtained another loan of $16,667 from American, and as security for this loan, gave a chattel mortgage upon a Bell helicopter which the Bankrupt also owned.

On December 30, 1946, A. R. F. Investment Company, a partnership, the petitioner on review (hereinafter called A. R. F.), guaranteed to American the payment of the December 28, 1946 note by the Bankrupt. This note was subsequently renewed and upon default by the Bankrupt, A. R. F. paid this note and took assignments of the note and the mortgage given upon the Bell helicopter to secure it. This debt amounted to $13,667.

Prior to such default, however, and likewise prior to the filing of the plan of reorganization, the Sikorsky helicopter had, on September 21, 1947, crashed and was demolished.

At the time of the crash, the Bankrupt owed to American the sum of $26,000 on the note secured by the Sikorsky, and in addition, owed insurance premiums to its insurance carriers, and the insurance company refused to pay the claim on the Sikorsky policy until the payment of the overdue premiums.

In order to meet this difficulty, the Bankrupt then discounted a note, on October

9, 1947, for the sum of $12,000 payable in two weeks to the Pennsylvania Company for Banking and Trusts (hereinafter called Pennsylvania Co.) whereby the Bankrupt received $11,976.67 and in turn assigned to the Pennsylvania Co. a claim for $12,000 against the proceeds of the Sikorsky insurance policy subject to the chattel mortgage held by American.

This dispute arises over the check issued by the insurance company upon the Sikorsky claim in the amount of $44,340.

American claims $26,000 being the balance due upon the Sikorsky note and mortgage, and bases its claim upon the validity thereof and also upon the insurance contract to which it was made a party by the provisions to which I have hereinbefore referred.

Pennsylvania Co. claims $12,000 being the balance due on its note of October 9, 1947, and bases its claim upon the theory that while the loan was within four months of the filing of the petition of reorganization, nevertheless, it was upon a present consideration for a valid purpose to enhance the bankrupt estate and not for the purpose of securing a preference.

The trustee seeks the balance of the fund after payment of American and Pennsylvania Co., and disputes the right of A. R. F. to participate in the proceeds of the fund except as a general creditor.

A. R. F., before the Referee, sought to participate in the proceeds of the insurance check on the Sikorsky helicopter to the extent of $13,667 and based its claim on the following. Upon assignment of the note and mortgage upon the Bell, which it, A. R. F. had guaranteed with American and after the payment upon such guarantee hereinbefore mentioned, that A. R. F. secured all the rights and privileges which American had against the Bankrupt by reason of the provisions of the note given by the Bankrupt to American. This note contained the standard other obligation clause authorizing the bank, American, to apply the Sikorsky chattel mortgage as security for other debts of the Bankrupt in addition to the loan on the Sikorsky; that thereby, American, had a lien on the proceeds of the Sikorsky crash, over and above the terms of its mortgage, and consequently this lien was assigned to A. R. F. upon its payment of the Bell note and mortgage.

The Referee, after hearing, filed an opinion and made an order disbursing the proceeds of the insurance check as follows:

First, payment to American of its claim of $26,000 being the balance due on the Sikorsky mortgage.

Second, payment to Pennsylvania Co. of its claim of $12,000 upon the assignment of the proceeds of the policy on the Sikorsky.

Third, payment to the trustee of the balance of the proceeds of the check.

From this opinion and order, A. R. F. petitions for review alleging that the Referee erred (a) in allowing the claim of Pennsylvania, (b) in denying the rights of A. R. F. to participate in the proceeds, and (c) in ordering the balance to be paid to the trustee.

■ This court, as it understands petitioner's (A. R. F.) position it accepts the views of the Referee as to the payment to American. Under the views laid down In re Summer, D.C., 35 F.2d 930, 931; In re Stucky Trucking & Rigging Co., D.C., 240 F. 427; and In re Conrad, D.C., 295 F. 864, this ruling is certainly correct and is approved by this court.

■ Now as to the ruling awarding Pennsylvania Co. the payment of its $12,-000 note; the Referee found the facts as follows: "At the time of the crash H. A. T. (Bankrupt) owed insurance premiums and in order to collect the loss by paying the premiums, discounted a note on October 9, 1947 for the sum of $12,000 payable in two weeks to the Pennsylvania Company for Banking and Trusts whereby the H. A. T. received $11,976.67 and in turn assigned to the Pennsylvania Company a claim against the insurance funds for $12,000 of which assignment the Pennsylvania Company gave due notice to the Insurance Company. The assignment is attached to the Proof of Claim of the Pennsylvania Company and marked herein as 'Exhibit No. 4.' "

The notice of assignment is set forth in foot note.[1]

It can be seen by a reading of the assignment that notice was duly given and received on October 10, 1947. This seems to be the crux of the question under the decisions. In Doggett v. Chelsea Trust Co., 1 Cir., 73 F.2d 614, Judge Wilson, speaking for the First Circuit, said at page 617: "The assignment of the accounts receivable in good faith as security for a present loan cannot be held to be a preference, even if made within four months of bankruptcy."

In speaking of whether an assignment for a present consideration is a preference under provisions of Sec. 60(a) of the Bankruptcy Act,[2] Mr. Justice Jackson, speaking for the Supreme Court in Corn Exchange Nat. Bank v. Klauder, 318 U.S. 434, at page 436, 63 S.Ct. 679, at page 681, 87 L.Ed. 884, 144 A.L.R. 1189, upholding the views of this Circuit in the same case,[3] said "Its apparent command is to test the effectiveness of a transfer, as against a trustee, by the standards which applicable state law would enforce against a good-faith purchaser. Only when such a purchaser is precluded from obtaining superior rights is the trustee so precluded. So long as the transaction is left open to possible intervening rights to such a purchaser, it is vulnerable to the intervening bankruptcy. By thus postponing the effective time of the transfer, the debt, which is effective when actually made, will be made antecedent to the delayed effective date of the transfer and therefore will be made a preferential transfer in law, although in fact made concurrently with the advance of money. In this case the transfers, good between the parties, had never been perfected as against good-faith purchasers by notice to the debtors as the law required, and so the conclusion follows from this reading of the Act that the petitioners lose their security under the preference prohibition of § 60, sub. b."

Conversely the notice of assignment in the case under consideration was given to and acknowledged by the debtor (Insurance Co.) at the time Pennsylvania advanced the money to the Bankrupt. Does this not meet the test laid down by the Supreme Court? It seems so.

This view has been restated by Judge Goodrich for this Circuit In re Rosen, 3 Cir., 157 F.2d 997.

A. R. F. attempts to argue that the Bankrupt, by the terms of its notes to American, had pledged all of its property to American and therefor A. R. F. was the recipient of such pledged property when it received an assignment of the Bell note and mortgage.

Speaking of pledges, Judge Clark of the Second Circuit in Swetnam v. Edmund Wright Ginsberg Corporation, 128 F.2d 1,

1. "The Pennsylvania Company
for Banking & Trusts
"Philadelphia 1.
"October 9, 1947
"Mr. G. G. Bennett, Claim Department
"Areo Insurance Underwriters
"75 Maiden Lane
"New York 7, New York
"Re: Helicopter Air Transport, Inc.
"Policy No. NS 30610
"Claim No. NA 2540-H
"Loss Sept. 21, 1947
"Helicopter NX 92804
"Dear Mr. Bennett:
"With respect to the above captioned claim, I am enclosing herewith executed copies of two assignments, dated October 8 from the Helicopter Air Transport, Inc., in connection with a loan of $12,-000 which was made today to that company. Similar executed copies are be-ing forwarded today to the American National Bank and Trust Company of Chicago in connection with its prior lien of $26,000.
"In order that our records may be complete we would appreciate your signing and returning the enclosed copy of this letter to signify your receipt and record of this agreement.
Very truly yours,
"Theodore S. Haltoman
"Assistant Treasurer
"Received: Gordon G. Bennett
"Received: Oct. 10, 1947
"Areo Insurance Underwriters
"Eastern Branch."

2. 52 Stat. 840, 869–870, 11 U.S.C.A. § 96(a).

3. In re Quaker City Sheet Metal Co., 3 Cir., 129 F.2d 894.

at page 2, said: "As the District Court remarked, the requirement that possession of pledged property must pass to the pledgee 'is so well established in the law that it is not open to discussion.'"

And pointing out the distinction between a pledge and a mortgage, Judge Baker In re Rogers, D.C., 20 F.Supp. 120, said at page 128: "The distinction between a pledge and a mortgage is stated in Jones, Chat.Mortg. § 4, as follows: 'The chief distinction between a mortgage and a pledge is that by a mortgage the general title is transferred to the mortgagee, subject to be revested by the performance of the condition; while by a pledge the pledgor retains the general title in himself, and parts with the possession for a special purpose.' And the same author in his work on Pledges (section 7) says: 'A pledge differs from a mortgage of personal property in being a lien upon property, and not a legal title to it. The legal title to the property pledged remains in the pledgor, while a mortgage passes the legal title of the property itself to the mortgagee, subject to be revested in the mortgagor upon the performance by him of an express condition subsequent.'"

[3] From a search of the record, I can find no allegation of fact that at any time was American in possession of any of the assets of the Bankrupt. Surely, no pledge could have existed under such circumstances.

But the Referee found as a fact that after the petition of reorganization was filed and a trustee appointed, the petitioner herein, A. R. F., was called upon to pay the note which it had guaranteed and did pay the sum of $13,667 and secured an assignment of the note so paid together with the existing chattel mortgage on the Bell helicopter. In so far as its lien to the extent of $13,667 upon the Bell helicopter is concerned, the court feels that A. R. F. naturally assumed the rights of American to that specific chattel but over and above that chattel the lien of the trustee had already attached to the assets of the Bankrupt. Therefore, it does not meet the test required by the Klauder case, supra, and

if the security of the Bell is insufficient to meet A. R. F.'s debt, such balance must fall in the same lot with the general creditors.

For the reasons set forth herein, the order of the Referee will be affirmed.