## In re ESTES.
### No. 1371.

United States District Court
N. D. Texas, Amarillo Division.
April 1, 1952.

Douglass & Maguire and Smith, Teed, Wade & Waters, Pampa, Tex., for petitioners.

Singleton & Trulove, Amarillo, Tex., for trustee.

Simpson, Clayton & Fullingim, Amarillo, Tex., for Mercury Ins. Co.

DOOLEY, District Judge.

A petition for review questions certain orders entered by the referee and first will come a summary of the pertinent record. On or about October 1, 1949 Frank Rapstine sold and delivered to Clifton B. Estes certain durable trade utensils and fixtures, also stock of food material and ingredients useful for and then being used in a bakery business, located in Pampa, Gray County, Texas. A purchase-money note dated October 1, 1949 in the principal sum of $10,000, bearing interest, and payable in periodical installments, was executed and delivered by said purchaser Estes and wife, Virginia, payable to the order of said Rapstine. The makers, simultaneously, to secure said note, also executed and delivered to the payee a chattel mortgage on all of the purchased property, and part of the provisions therein read as follows:

"And we hereby covenant, for ourselves, * * * with the said mortgagee, * * * as follows:

* * * * * *

"2. Until such payment shall be made, keep the said goods and chattels insured against loss and damage by fire in at least the sum of $10,000.00 for the benefit of the said mortgagee, * * * in such form and in such insurance companies as he or they shall approve, covenanting that in default thereof he or they may effect such insurance" at the cost of the mortgagors.

"It is further agreed by the parties hereto that all other goods and chattels of a like kind used in the type of business of a bakery, with those hereinbefore described, and all additions to the same which shall be brought by me upon the said premises, shall be subject to this mortgage; and I

hereby covenant and agree, upon request of the said mortgagee, to execute and immediately cause to be duly recorded a further and confirmatory mortgage of any such property hereafter to be acquired by me during the continuance of this mortgage."

The said chattel mortgage was duly filed and recorded in the chattel mortgage records of Gray County, Texas.

The Mercury Insurance Company issued to said Estes a fire insurance policy, dated March 19, 1950, for one year thereafter, in the amount of $10,000, on the property used by said insured in his bakery business located in Pampa, Texas, being the same durable articles and also the same baking materials or replenishments thereof bought from Rapstine in October 1949, and said policy made any loss incurred payable to said Rapstine, mortgagee, as his interest might appear. The insured property was destroyed or damaged by fire on or about December 23, 1950. The stock of food materials and ingredients to put in bakery products had all been renewed by replenishments between the original purchase in October 1949 and the fire in December 1950, but all of the durable chattels acquired in said purchase were still on hand at the time of the fire. The fire loss took the full limit of the policy and about one-fourth thereof was on the durable property and about three-fourths on the ingredient materials.

On February 26, 1951 Cause No. 9979 was filed by Rapstine and wife, Louise, against Estes and wife, Virginia, and the Mercury Insurance Company in the 31st District Court of Gray County, Texas, to recover judgment for the unpaid balance owing on the note of October 1, 1949 (which plaintiffs elected to accelerate as provided in the chattel mortgage on the ground that said security was deemed unsafe), and to collect such·debt out of the fire loss payable by the insurer, and to foreclose the chattel mortgage lien against the incumbered property. The defendants in said suit were duly cited and answered therein. The case was tried on May 18, 1951 and judgment was rendered that same day for the plaintiffs, but the

judgment was written later, signed by the judge, and filed in the office of the court clerk for entry some time on June 1, 1951. It adjudged that the plaintiffs Rapstine and wife recover from the defendants Estes and wife the sum of $8,746.55 principal and interest on said note, and $874.66 as attorney's fees, and adjudged that the chattel mortgage in question created a lien against the insurance claim and the said plaintiffs recovered the sum of $9,621.21 from the defendant insurance company, and adjudged that the insurance company pay to the said plaintiffs the aforesaid sum and to the other defendants the further sum of $419.86, to be in discharge of all liability under the insurance policy, but instead of foreclosing the chattel mortgage it adjudged that payment of the insurance proceeds as ordered was also to cancel and discharge said chattel mortgage. The said judgment became final without any appeal.

On June 1, 1951 and probably before above judgment was filed, said Clifton B. Estes filed his petition in this court to be adjudged a bankrupt, and such adjudication was made by the referee on June 4, 1951.

The said Estes resumed his bakery business following said fire, after reconditioning the durable equipment and salvaging what he could of the stock of materials and ingredients, and was still in said business, using such property, including replenishments of the stock of materials and supplies, when he filed his petition and was adjudged a bankrupt. The trustee in bankruptcy took possession of all said property and afterwards sold same and collected the proceeds, under orders of the referee.

The trustee in bankruptcy later filed a petition to capture the insurance money payable on above fire loss as an asset of the estate, relying on the theory that, for the first point, the foregoing chattel mortgage, exclusive of the durable chattels, was on a stock of goods, wares and merchandise daily exposed for sale and so void as to the trustee, under a presently noticed statute of Texas, and that, for the second point, the relief secured by Rapstine under the terms of the judgment in his state court suit rested on a lien created by said

judgment under circumstances making it a fraudulent and void lien within the intent of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.

The referee sustained the trustee's claim to the insurance liability of $10,000, excepting $2,500 conceded to Rapstine as the fire loss on the durable chattels covered by the chattel mortgage in question, and also sustained the trustee's contest of the judgment in the state court, same being "vacated, held and decreed to be null and void" in the respect of the legal right to collect said insurance.

■ The first point in this review questions jurisdiction for a summary proceeding on the trustee's application. The general rule is that the bankruptcy court may exercise summary jurisdiction in dealing with adverse claims to property in the actual or constructive possession of the court held as part of the estate, but cannot proceed summarily to determine a contest of property rights between the trustee in bankruptcy and an adverse claimant in possession of the disputed property, unless the contention of the adverse claimant is merely colorable, or unless said claimant by lack of objection or otherwise waives any question of summary jurisdiction.[1] The trustee in this instance had possession of the insurance policy in question and the bankrupt is the insured there-

in named, although the loss payable provision makes Rapstine the payee to the extent of his interest. The thing in dispute is an intangible, a kind of chose in action, and eludes visible possession. The trustee alleged that the state court had fixed a lien on the insurance debt in favor of Rapstine within four months of this bankruptcy, and when the bankrupt was insolvent. The adverse claimant, Rapstine, has contested on the ground that the inception of his lien came well before the four months preceding bankruptcy. This controversy probably would not have been within the summary jurisdiction of the bankruptcy court, over objection, during many years in the history of the bankruptcy act, but the law as amended in 1938 now makes a question of this particular kind subject to summary jurisdiction, regardless of possession, under certain provisions in Sec. 67, sub. a of the act.[2]

■ The next question relates to the proper construction of Art. 4000, Revised Statutes of Texas 1925, as amended, Vernon's Ann.Civ.St. art. 4000, and the relevant part of that statute, including an important amendment shown in italics, effective April 19, 1949, is quoted below.[3] This is an old statute of 1879 in its original form and the courts of Texas have always taken a restrictive view of it. The cases hold that it is in derogation of the

1. Taubel-Scott-Kitzmiller Co., Inc. v. Fox, 264 U.S. 426, 44 S.Ct. 396, 68 L.Ed. 770; Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897; Harris v. Avery Brundage Co., 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100; Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876; Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293; Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97; In re Prima Co., 7 Cir., 98 F.2d 952.

2. "(1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition in bankruptcy * * * by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this act.

\* \* \* \* \*

"(4) The court shall have summary jurisdiction of any proceeding by the trustee or debtor, as the case may be, to hear and determine the rights of any parties under this subdivision a."

3. "Every mortgage, deed of trust, or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods by said owner, shall be deemed fraudulent and void; * * * *and further provided that this Article shall not apply to any mortgage, deed or trust or other form of lien given to secure the purchase price of any such goods, wares or merchandise, except as to all retail sales made in good faith in the regular course of business.*"

common law and will not be construed liberally beyond the clear intent of the legislature.[4] Such a mortgage is unquestionably good between the parties.[5] The trustee concedes that the durable articles described in the present chattel mortgage are not within the purview of the law as same were not exposed for sale in the regular course of business, but contends the other mortgaged property, such as flour, sugar, shortening and other ingredients for the bakery products, are within the force of the law. There is no evidence however that any of such commodities were ever displayed or offered for sale as such in the course of this bakery business, and in that state of the record, together with the improbability that same were held and exposed for such sale, the trustee's contention stands without substantial support.[6] The courts of Texas recognize the validity of provisions in a chattel mortgage making same effective against after-acquired property, where it is clear the parties anticipated that property of the given kind would be acquired by the mortgagor and the terms of the mortgage sufficiently identify such intended property. The terms of the present chattel mortgage are clearly adequate to meet that rule.[7] The recognized principles already reviewed would be enough to uphold this chattel mortgage entirely, but even more surely the question is now sealed by the 1949 amendment of the statute. Under the clear language and intent of that amendment this chattel mortgage would not be affected by the statute, however much of the mortgaged property was exposed for sale, except to the extent of any property actually sold, and that is to say the chattel mortgage in any event was good and valid against all of the property described therein (including the re-

plenished bakery materials), and on hand at the time of the fire.

The last question relates to the incidents of the rights or lien held by Rapstine under the insurance policy issued to Estes. In reality he stood higher in a sense than a mere lienor since he was the direct payee named in the policy to the extent of his interest and the unpaid balance of the note he held was the measure of that interest at the time of the fire in December 1950. That interest attached at the time the policy was issued in March 1950. It was in the nature of a contractual interest between himself and the insurance company. In other words, the policy reflected a contract not only between the company and Estes but also between the company and Rapstine.[8] His rights as payee under the policy became fixed long before the date of bankruptcy. It is a confusion of terms to say that the proceeds of the fire loss are to take the place of the property damaged or destroyed. That expression often has a proper place in relation to proceeds from the sale of property where existing liens are involved, but this present insurance indemnity as security has no analogy to a sale and the obligation for the payment of the fire loss was due under a personal contract in favor of Rapstine. That right was perfect even without thinking in terms of an attendant lien. He did not have to work his right out through a lien theory as would have been true if the policy had been issued exclusively to Estes and he had assigned same to Rapstine as security for the note debt, either with or without the coexistence of a chattel mortgage. On the other hand there is no serious inaccuracy in using lien phraseology as was done in the judgment rendered by the state court. Certainly Rapstine had rights of no less dignity than an equitable lien

---

4. Laredo Nat'l Bank v. Steinhardt, Tex. Civ.App., 15 S.W.2d 130; Bowen v. Lansing Wagon Works, 91 Tex. 385, 43 S. W. 872; Grimes v. Huntsville State Bank, Tex.Civ.App., 12 S.W.2d 1087.

5. Trice v. American Trust & Savings Bank, Tex.Civ.App., 259 S.W. 993; Mayfield Company v. Harlan & Harlan, Tex. Civ.App., 184 S.W. 313.

6. In re Ballard, D.C., 279 F. 574.

7. Richardson v. Washington, 88 Tex. 339, 31 S.W. 614; Lawson v. First National Bank, Tex.Civ.App., 150 S.W.2d 279.

8. Camden Fire Ins. Ass'n v. Harold E. Clayton & Co., 117 Tex. 414, 6 S.W.2d 1029; Georgia Home Ins. Co. v. Golden, 127 Tex. 93, 91 S.W.2d 695.

against the insurance money on the fire loss payable under the policy. If his interest is looked at as an equitable lien again it was acquired at the time the policy was issued in March 1950. No one says that Estes was insolvent in March 1950. The authorities make it clear that Rapstine's interest under the insurance policy remained intact in spite of the intervening bankruptcy and that his right to the insurance money in the amount of the note debt was superior to any claim of the trustee. The trustee's claim is restricted to any surplus from the insurance payment.[9] The familiar doctrine on the standing of equitable liens in connection with bankruptcy administration was not changed by the 1938 amendments of the act.[10] Equitable liens are recognized and enforced in Texas.[11]

▆ The trustee's theory that Rapstine's lien in part was created for the first time by the judgment in the state court must rest on the alleged invalidity of the chattel mortgage with respect to the baking materials and ingredients, but the trustee's cause fails for two reasons, first, as already held, the chattel mortgage was good against that property, and second, Rapstine is entitled by prior right of contract security to collect the amount of the note debt out of the insurance moneys, either with or without a chattel mortgage. The state court has adjudged him that right. That court had jurisdiction of the parties and competent power to render the judgment. The portion of said insurance fund recovered by Rapstine could not have been in any proper sense property or assets belonging to Estes at the time of his bankruptcy. It follows that said judgment is not only right in law but is now final and conclusive as res judicata.[12]

The referee's orders vacating the state court judgment and adjudging the insurance funds to the trustee, subject to a part interest of the claimant Rapstine, are set aside and direction given that the trustee's petition in question be dismissed.

---

9. Hanson v. W. L. Blake & Co., D.C., 155 F. 342; In re Zitron, D.C., 203 F. 79; In re Stucky Trucking & Rigging Co., D.C., 240 F. 427; Walton Land & Timber Co. v. Runyan, 5 Cir., 269 F. 130; In re Conrad, D.C., 295 F. 864; McDonald v. Daskam, 7 Cir., 116 F. 276; In re Jeffries, D.C., 18 F.2d 149; In re Summer, D.C., 35 F.2d 930; Gamble v. Mathias, 5 Cir., 61 F.2d 911; In re R. S. McConnell Lumber Co., Inc., D.C., 50 F. 2d 941; Lewis v. Julius, D.C., 212 F. 224; In re Helicopter Air Transport, Inc., D. C., 85 F.Supp. 918; Fidelity & Guaranty Ins. Corp. v. Super-Cold Southwest Co., Tex.Civ.App., 225 S.W.2d 924.

10. Mulhern v. Albin, 8 Cir., 163 F.2d 41.

11. Morrison v. Farmer, 147 Tex. 122, 213 S.W.2d 813; Williams v. Greer, Tex.Civ. App., 122 S.W.2d 247; House v. Brackins, Tex.Civ.App., 130 S.W.2d 917.

12. Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060; Union Joint Stock Land Bank v. Byerly, 310 U.S. 1, 60 S. Ct. 773, 84 L.Ed. 1041; Farrell v. Wysong, 8 Cir., 246 F. 281; Rader v. Star Mill & Elevator Co., 8 Cir., 258 F. 599; In re Greenlie-Halliday Co., 2 Cir., 57 F. 2d 173; Metcalf Brothers & Co. v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122.