Samuel LUPER, Plaintiff,

v.

Leonard F. RUHL et al., Defendants.

Civ. No. 4056.

United States District Court
S. D. Ohio, E. D.
May 17, 1956.

Gene A. Jones, Columbus, Ohio, for plaintiff.

John J. Chester, Columbus, Ohio, for defendant Leonard F. Ruhl.

Eagleson & Eagleson, Columbus, Ohio, for defendant Ohio State Federal Savings and Loan Ass'n.

CECIL, District Judge.

Samuel Luper, the plaintiff in this case, is the Trustee in Bankruptcy of Doris Elnora Ruhl. The defendant, Leonard F. Ruhl, is the husband of the bankrupt.

The plaintiff filed a complaint in which it is alleged that the bankrupt transferred two pieces of real estate to her husband, without consideration therefor, at a time when she was insolvent and that the transactions are, therefore, void. The plaintiff seeks to have these transactions set aside and the properties in question used to satisfy the debts of the bankrupt estate.

Counsel for both parties entered into a stipulation setting forth the following facts:

On September 21, 1943, title to Lot No. 4, New Linden Addition was taken in the name of Doris Elnora Ruhl, then the wife of the defendant, Leonard F. Ruhl.

On April 18, 1947, title to Lot No. 78, New Linden Addition, was taken in the name of Doris Elnora Ruhl.

On January 30, 1951, Doris Elnora Ruhl and her husband, Leonard F. Ruhl, mortgaged these two properties to City National Bank of Columbus, for $20,000. This was an increase of $8,000 on the existing loan of $12,000. On the same date, the defendant, Leonard F. Ruhl, loaned $8,000 to the Ruhl Optical Company, a partnership in which Doris Elnora Ruhl

and Henry Ruhl, brother of Leonard F. Ruhl, were partners. The terms of the new $20,000 loan from the City National Bank provided for repayment at the rate of $300 per month. The $8,000 loan was secured by a partnership note in the sum of $8,000 and by a chattel mortgage on the merchandise, inventory, furniture and fixtures situated at 8 West Gay Street, Columbus, Ohio, in the sum of $4,848.36.

On April 3, 1952, Doris Elnora Ruhl quitclaimed Lot No. 4 to her husband, Leonard F. Ruhl. This deed was recorded April 9, 1953.

On July 30, 1952, Leonard F. Ruhl and his wife, Doris Elnora Ruhl, borrowed $5,700 from Ohio State Federal Savings and Loan Association of Columbus, Ohio, and gave a mortgage to said association on Lot No. 78, as security.

On July 31, 1952, City National Bank released its mortgage on Lot No. 78 upon the payment of $3,000. The mortgage of Ohio State Federal Savings & Loan Association on Lot No. 78, was recorded July 31, 1952.

On or about July 31, 1952, a property described as Lot No. 7, in Upper Arlington, was purchased and the title taken in the name of Leonard F. Ruhl. The purchase price of this property was $20,000 and it was financed in part by a mortgage of $12,500.

On August 27, 1952, Doris Elnora Ruhl quitclaimed Lot No. 78 to her husband, Leonard F. Ruhl. This lot was sold by Mr. Ruhl on September 26, 1952, for $8,500. It is stipulated that the value of Lot No. 4, with the improvements thereon is $40,000, and that the value of Lot No. 78 was $8,500. For his claim against Lot No. 4, plaintiff relies upon the following authority: Section 110, sub. e (1), 11 U.S.C.A., which reads as follows:

"(e) (1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor."

Section 1335.02, Ohio Revised Code, which reads as follows:

"Every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods, or chattels, and every bond, judgment, or execution, made or obtained with intent to defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the persons purchasing such lands, tenements, hereditaments, rents, goods, or chattels, is void."

It is claimed by the plaintiff that it is not necessary to show any specific intent to defraud where a grantor conveys property without consideration and in so doing is unable to satisfy existing obligations. This contention is supported by Squire v. Cramer, 64 Ohio App. 169, 28 N.E.2d 516, and Crumbaugh v. Kugler, 2 Ohio State 373, 374.

Further facts revealed by the evidence are that at the time Lot No. 4 was purchased, it was used by the defendant, Leonard F. Ruhl, and his family for a residence and an appliance shop operated by the defendant. Subsequent improvements were made, first, by taking the porch off of the house and building in front of it. Subsequently, a building was built on the rear end of the lot, and finally, the house was moved from between these two buildings on Lot 4, to Lot 78. Lot 4 was further improved by building between the two buildings already mentioned. The house, after being moved to Lot 78 was fixed up and used as the residence for the defendant and his family. This house continued to be the residence of the defendant and his family until Lot 7 in Upper Arlington was purchased.

The Court finds that the net proceeds of the sale of Lot 78 amounting to $5,075, was used to finance the purchase of the Upper Arlington property.

Both partners of the Ruhl Optical Company filed petitions in bankruptcy

and Doris Elnora Ruhl was adjudicated a bankrupt on the 17th of April, 1953.

The evidence discloses that the partnership was to pay $300 per month directly to the City National Bank until the $20,000 loan was reduced to $12,000. The partnership was to pay the interest of the entire loan during this period as a premium for the loan.

■ The plaintiff claims that Doris Elnora Ruhl was insolvent and unable to pay her debts on April 3, 1952, at the time she quitclaimed Lot No. 4 to her husband.

Counsel for the plaintiff, on pages 3 and 4 of his brief, sets up an account showing that the bankrupt, Doris Elnora Ruhl, owed $35,179.87 at the time of the quitclaim deed for Lot No. 4. The Court considers that this account is in error.

Counsel for plaintiff charges the bankrupt with the $20,000 loan on the two properties reduced by $4,200 being the accumulated monthly payments paid by the partnership. The partnership is then charged with $15,000 of notes owed by it to the defendant, Leonard F. Ruhl, reduced by the same $4,200 referred to in the previous item. Merchandise obligations of the partnership are then set up in the amount of $8,579.87. There is a duplication of loans and a duplication of credits in these items. If the bankrupt is to be credited with the ownership of the property and charged with the $20,000 loan, less the $4,200 credit, then she should not be charged with the $8,000 loan made by her husband to the partnership. It is obvious that the $8,000 loan to the partnership was paid out of the new $20,000 loan on the property. If the bankrupt is credited with the ownership of the property, the $8,000 additional loan would represent her own capital put in the business. If this is considered as capital and not a debt, then the bankrupt was not insolvent at the time she quitclaimed Lot 4 to her husband. If the $8,000 is charged against the partnership as a debt, then the partnership business was insolvent.

Counsel for the defendant sets up a financial statement on page 6 of his brief which the Court likewise considers inaccurate. In this statement it is indicated that the bankrupt or the partnership had a net worth of $2,720.13. This account ignores the $8,000 loan to the partnership.

Counsel for the defendant seems to consider that this $8,000 loan can be ignored for the reason that the defendant made no claim against the bankrupt for it. The Court cannot accept this position.

■■ At this point, the Court is considering the rights of the plaintiff in Lot No. 4 and the question arises as to whether or not this property was in reality the property of the bankrupt or of the defendant.

The Court finds that this property was purchased during the Second World War and that at that time, the defendant, husband of the bankrupt, was in the hazardous business of flying airplanes.

The Court finds that this property was purchased with money of the defendant and that it was the understanding between the defendant, Leonard F. Ruhl, and his wife, now the bankrupt, that at the time of its purchase and all times subsequent thereto, the property was in reality the property of the defendant. Its value was greatly enhanced through the management and money of the defendant in developing it into a business property. The fact that the defendant took a note from the partnership for $8,000 at the time the loan was increased from $12,000 to $20,000 is some evidence of how the parties themselves regarded this property.

The Court is of the opinion and so finds, that the defendant was the equitable owner of Lot No. 4. The defendant being the equitable owner, it cannot be said that the lot was transferred to him without consideration. Klaustermeyer v. Cleveland Trust Co., 89 Ohio State 142, 105 N.E. 278; In re Estes, D.C., 105 F.Supp. 761.

The Court concludes that the plaintiff is not entitled to have the quitclaim deed of April 3, 1952 for Lot 4, set aside.

It is claimed by counsel for the plaintiff that the quit-claim deed of August 27, 1952, for Lot No. 78 is void by reason of Section 107, sub. d(2), 11 U.S.C.A., which reads in part as follows:

"(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; "

The evidence does not disclose at the time this lot was purchased that there was any understanding between the parties as to the ownership of the property. This lot was acquired for the purpose of placing the house upon it that was being moved from Lot 4. It was the intention of the parties that this house should become their residence. It was so accepted and used by the parties.

Although the lot was purchased with funds of the defendant, there is nothing in the evidence to indicate that it was not intended as a gift to the wife. It is a common practice for men, particularly men with small children, to place the title to residence property in the name of the wife and mother. It cannot be said that a wife who keeps up the home and rears the children, has no earning capacity or that she has no share in her husband's income. The Court concludes, therefore, that the bankrupt was the equitable owner of this property, as well as the legal title holder.

The Court is of the opinion that Lot No. 7 in Upper Arlington should be subjected to a lien for the benefit of the bankrupt estate to the extent that it was financed out of the proceeds of the sale of Lot No. 78. The Court finds that this amount is $5,075.

An order may be drawn in accordance with the rulings herein made.

The Court is of the opinion that the Findings of Fact and Conclusions of Law herein stated are sufficient to comply with the requirements of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.